574 A.2d 1045

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Joseph P. GALLOWAY, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 27, 1988.

Decided May 15, 1990.

LeRoy S. Zimmerman, Atty. Gen., Robert L. Keuch, Executive Deputy, Atty. Gen., Lawrence N. Claus, Senior Deputy Atty. Gen., Paul Von Geis, Deputy Atty. Gen., Robert A. Graci, Chief Deputy Atty. Gen., Paul M. Yatron, Harrisburg, for appellant.

Joseph M. George, Mark D. Brooks, Uniontown, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This case arises from the Commonwealth's request for us to review a trial court grant, subsequently affirmed by the Superior Court, of a Motion to Quash a Criminal Information in a case where Appellee, the driver of an automobile being driven erratically and on the wrong side of the highway, was stopped by a Special Agent of the Attorney General pending the arrival of the State Police who then

took him into custody and administered a breathalyzer test. For the reasons explained below, we reverse.

The facts, as stipulated, at the trial court hearing on the motion, are as follows: Agent Charles Becker of the Bureau of Criminal Investigations of the Pennsylvania Attorney General's Office pursued Appellee's truck which was weaving erratically and being driven the wrong way on a highway. Agent Becker, dressed in plain clothes, flashed the red siren on his unmarked car. Appellee Galloway pulled off the road and Agent Becker used a bullhorn to order him out of the truck to the rear and to remain still. The agent then removed the truck's keys, presented his badge to Galloway, gave some type of *Miranda* warning, and stated that he was under arrest (H.T. 3–4, 9). Agent Becker then radioed the State Police and Trooper Robert Frederick responded to the call and took Galloway into custody, administered a breathalyzer test which showed a reading of .17 percent, and signed a criminal complaint charging him with driving under the influence (75 Pa.C.S. § 3731). Trooper Frederick's affidavit states his knowledge of the crime was based on information received from "Charles V. Becker," and another witness, William L. Kelly, as well as the "odor of alcohol" and "breathalyzer test administered."

After the hearing before the Honorable W. Franks on Appellee-defendant's motion to quash the criminal information filed in this case, the motion was granted. In his opinion, Judge Franks concluded:

The argument put forth by defendant, and concurred in by this Court, is that Special Agent Becker, as a member of the Attorney General's Office, was without authority to arrest defendant in the instant situation. The Commonwealth contends that Special Agent Becker falls within the definition of a "police officer" as construed by the Pa.R.Crim.P. No. 51(c), 42 Pa.C.S.A. As it was stipulated to by the parties that this was not a private citizen's arrest, Special Agent Becker must be statutorily authorized to make arrests. This appears to be a case of first

impression in the Commonwealth. Counsel and the Court have not found any decisions on this issue by our Courts to guide us. However, we find that a Special Agent of the Attorney General's Office did not have the authority to make an arrest such as occurred in the instant case. (Slip opinion, p. 2).

The Superior Court affirmed in a memorandum opinion, 348 Pa.Super. 631, 501 A.2d 291, adopting the argument that Judge Franks had the sound discretion to grant the motion under *Commonwealth v. Niemetz*, 282 Pa.Superior Ct. 431, 422 A.2d 1369 (1980).

■ Initially, we agree with the lower courts and take this opportunity to reject expressly the Commonwealth's claim that the Office of the Attorney General possesses general arrest powers. Agent Becker, therefore, could not have been acting as an arresting officer in this case.

In reaching this conclusion, we point out first that under Pa.R.Crim.P. 3(*l*) and (*o*), a clear distinction is drawn between a "law enforcement officer" and a "police officer":

(1) Law Enforcement Officer is any person who is by law given the power to enforce the law when acting within the scope of that person's employment.

(2) Police Officer is any person who is by law given the power to arrest when acting within the scope of the person's employment.

Second, under the Commonwealth Attorney's Act, Act of October 15, 1980, P.L. 950, No. 164, § 101, *et seq.*, 71 P.S. § 732.101 *et seq.* (hereinafter referred to as "Act"), the intent of the General Assembly was to limit the authority of that Office to investigate and prosecute *only* those criminal offenses specifically enumerated by the legislature. Section 732–205 of the Act articulates the cases in which the Attorney General is empowered to act:

*Section 732–205. Criminal Prosecutions.*

(a) Prosecutions.—The Attorney General shall have the power to prosecute in any county court the following cases:

(1) Criminal charges against State officials or employees affecting the performance of their public duties or the maintenance of the public trust and criminal charges against persons attempting to influence such State officials or employees or benefit from such influence or attempt to influence.

(2) Criminal charges involving corrupt organizations as provided for in 18 Pa.C.S. § 911 (relating to corrupt organizations).

(3) Upon the request of a district attorney who lacks the resources to conduct an adequate investigation or the prosecution of the criminal case or matter or who represents that there is the potential for an actual or apparent conflict of interest on the part of the district attorney or his office.

(4) The Attorney General may petition the court having jurisdiction over any criminal proceeding to permit the Attorney General to supersede the district attorney in order to prosecute a criminal action or to institute criminal proceedings. Upon the filing of the petition, the president judge shall request the Supreme Court to assign a judge to hear the matter. The judge assigned shall hear the matter within 30 days after appointment and make a determination as to whether to allow supersession within 60 days after the hearing. The district attorney shall be given notice of the hearing and may appear and oppose the granting of the petition. Supersession shall be ordered if the Attorney General establishes by a preponderance of the evidence that the district attorney has failed or refused to prosecute and such failure or refusal constitutes abuse of discretion.

(5) When the president judge in the district having jurisdiction of any criminal proceeding has reason to believe that the case is a proper one for the intervention of the Commonwealth, he shall request the Attorney General to represent the Commonwealth in the proceeding and to investigate charges and prosecute the defendant. If the Attorney General agrees that the case is a proper one for

intervention, he shall file a petition with the court and proceed as provided in paragraph (4). If the Attorney General determines that the case is not a proper case for intervention, he shall notify the president judge accordingly.

(6) Criminal charges investigated by and referred to him by a Commonwealth agency arising out of enforcement provisions of the statute charging the agency with a duty to enforce its provision.

(7) Indictments returned by an investigating grand jury obtained by the Attorney General.

(8) Criminal charges arising out of activities of the State Medicaid Fraud Control Unit as authorized by Article XIV (relating to fraud and abuse control), Act of June 13, 1967, (P.L. 31, No. 21), known as the "Public Welfare Code," and the federal law known as the "Medicare–Medicaid Antifraud and Abuse Amendments." (Footnotes omitted).

The subsequent section, 732–206, provides that:

Section 732–206. Law enforcement and criminal investigations; investigating grand juries.

(a) Law enforcement; criminal investigations. The Attorney General shall be the chief law enforcement officer of the Commonwealth; the district attorney shall be the chief law enforcement officer for the county in which he is elected. The Attorney General shall have the power to investigate any criminal offense which he has the power to prosecute under section 205; he shall continue the existing programs relating to drug law enforcement. The Pennsylvania State police shall cooperate with the Attorney General and furnish such services as the Attorney General shall request.

Our most recent interpretation of that statute held that the Act is the sole grant of authority to the Attorney General, and he "does not possess any inherent additional powers not therein set forth." See, *Commonwealth v. Carsia*, 512 Pa. 509, 511, 517 A.2d 956, 957 (1986), where we

also concluded "that the power of the Attorney General to prosecute criminal matters is prescribed by section 205."

Having determined that this state officer is governed solely by the Act, we turn next to the Commonwealth's contention that "inherent in the authority to investigate and prosecute is the authority to arrest." (Brief, p. 23). We agree that the Attorney General and his agents are empowered to apply for warrants and to make arrests in those instances where an investigation or prosecution is undertaken pursuant to § 732–205. Obviously, that arrest power is designed to facilitate the investigative and prosecutorial aims of the Attorney General's office. But the power is limited thereby, and we will not read the statute to expand the scope of that power beyond the bounds of the legislative intent underlying it. The specific issue to be decided here is whether those arrest powers, invested in a "law enforcement" officer for purposes of investigating and prosecuting offenses listed in § 732–205, are also of a general nature in the same sense by which municipal police officers and the State Police are authorized by statute to arrest as "police officers." Neither the language of the Act itself, its legislative history,[1] nor case law convinces us that there is any reasonable interpretation of the Act which allows the Attorney General to arrest for offenses outside of those contemplated by the primary purpose behind the statute. The power of arrest under the Act is limited to those actions which fall within the "scope of employment" as defined and circumscribed by the specific offenses in § 732–205. The Attorney General is a "law enforcement officer" and not a "police officer."

Since a violation of the Motor Vehicle Code does not appear in § 732–205,[2] we must conclude that Agent Beck-

1. JOINT STATE GOVERNMENT COMMISSION: TASK FORCE ON THE OFFICE OF ELECTED ATTORNEY GENERAL, Final Report (1979).

2. The Motor Vehicle Code, 75 Pa.C.S. § 6304 specifically provides that authority to arrest without a warrant is limited as follows:

   **§ 6304. Authority to arrest without warrant**

er's detention of Joseph Galloway was not pursuant to any arrest powers deriving from his status as an agent of the Attorney General.

■ This does not end the matter, however. The subsequent arrest by Trooper Frederick was perfectly valid. Under 75 Pa.C.S. § 6304 (cited at footnote 2 above), a state police officer does not have the authority to arrest for motor vehicle code violations without a warrant where he was not present when the offense occurred. This is consistent with the general principle that warrantless arrests for offenses committed outside the presence of the arresting officer may only be made where there is probable cause to believe that a felony, not a misdemeanor, has been, or is being, committed. See, *Commonwealth v. Gallagher*, 242 Pa.Superior Ct. 289, 363 A.2d 1274 (1976). Nevertheless, there are exceptions to this general principle that must be considered. Pa.R.Crim.P. 101 provides:

**Means of Instituting Proceedings in Court Cases**

Criminal proceedings in court cases shall be

(c) **Certain arrests authorized.**—In

(1) filing a written complaint; or

(2) an arrest without a warrant when the offense is a felony or misdemeanor committed in the presence of the police officer making the arrest; or

(3) an arrest without a warrant upon probable cause when the offense is a felony; or

(a) **Pennsylvania State Police.**—A member of the Pennsylvania State Police who is in uniform may arrest without a warrant any person who violates any provision of this title in the presence of the police officer making the arrest.
(b) **Other police officers.**—Any police officer who is in uniform may arrest without a warrant any nonresident who violates any provision of this title in the presence of the police officer in making the arrest.
(c) **Other powers preserved.**—The powers of arrest conferred by this section are in addition to any other powers of arrest conferred by law.

The Commonwealth Attorney's Act, of course, confers no such power so as to fit under (c).

(4) an arrest without a warrant upon probable cause when the offense is a misdemeanor not committed in the presence of the police officer making the arrest, when such arrest without a warrant is specifically authorized by statute.

42 Pa.C.S. § 3731, which deals expressly with driving under the influence of alcohol, and under which the Appellee herein was charged, provides in subsection (c) as follows:

(c) Certain arrests authorized.—In addition to any other powers of arrest, a police officer is hereby authorized to arrest without a warrant any person who the officer has probable cause to believe has violated the provisions of this section, regardless of whether the alleged violation was committed in the presence of such officer. This authority to arrest extends to any hospital or other medical treatment facility located beyond the territorial limits of the police officer's political subdivision at which the person to be arrested is found or was taken or removed to for purposes of emergency treatment examination or evaluation provided there is probable cause to believe that the violation of this section occurred within the police officer's political subdivision.

Reading this section together with Pa.R.Crim.P. 101(4), it is obvious that the warrantless arrest by Trooper Frederick for "driving under the influence" was perfectly legal and valid even though the Trooper was not present when the offense occurred. The untainted [3] information furnished by Agent Becker and the second witness, and the presence of an "odor of alcohol," was more than enough to establish probable cause.

Reversed.

**3.** It must not be forgotten that before Agent Becker made his unauthorized arrest, he had observed the Appellee driving erratically and on the wrong side of the highway. This information, alone, given to the Trooper was sufficient to give the Trooper probable cause to believe that Appellee was driving under the influence and to support a warrantless arrest.

STOUT, Former Justice, did not participate in the decision of this matter.

NIX, C.J., files a concurring opinion.

ZAPPALA, J., files a dissenting opinion in which LARSEN, J., joins.

NIX, Chief Justice, concurring.

As the majority concedes, the Attorney General's agent could have made the arrest in this case as a private citizen. This fact was also acknowledged by defense counsel. R.R. 12. Notwithstanding the Assistant District Attorney stipulated that the agent had acted as a police officer, not as a private citizen. R.R. 16. I concede the interest that the Attorney General may have in determining the extent of his agents' authority, conferred under the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, No. 164, 71 P.S. §§ 732–101 through 732–504. However, I cannot accept the legitimacy of securing this clarification at the expense of quashing an information for conduct posing a serious threat to the lives and well-being of all who may have come into contact with appellee on that occasion.

The theory justifying the use of an exclusionary rule to exclude evidence damaging to a defendant is that the illegality in procuring that evidence offends our collective concept of fundamental fairness. We have made the societal judgment that it is better to relieve the culprit of responsibility for the act rather than condone law enforcement officers in conduct of such nature. In this case, the agent did what he had a right to do as an ordinary citizen, which he indeed was. The fact that he purported to act as an agent, under the mistaken view that he was so authorized, does not establish the type of "illegal conduct" which would justify the invocation of an exclusionary rule. Indeed, there was no illegality since the agent, as a citizen, had the right to act in the manner he did.

Nor can I accept the majority's ingenious argument that the subsequent warrantless arrest by the State Trooper was

valid. If it is accepted that the detention of appellee by the Agent, which was made under the color of law, was an illegal one, it would necessarily infect the subsequent "warrantless arrest" of the trooper.

I, therefore, concur in the result because the facts presented do not justify the invocation of an exclusionary rule.

ZAPPALA, Justice, dissenting.

While I agree with the majority that the Attorney General is not clothed with the arrest powers otherwise possessed by a police officer, I cannot concur in that portion of the opinion which so swiftly blinds itself to the patent illegality of the State action that brought about this arrest, cleansing it with the appearance of a State Police officer who is permitted to arrest Appellee on the basis of the "untainted" information supplied by the same Deputy Attorney General whose actions were chastised just a few paragraphs before.

There can be no dispute that the actions of the Attorney General's agent here are state action. As such, inasmuch as it is held that those actions were not within the power of the agent, those acts were violative of Appellee's Constitutional rights, under both the Federal (Fourth and Fourteenth Amendments) and State (Article 1, § 8) Constitutions. The tactics utilized to apprehend Appellee were stipulated on the record as being performed under color of State authority. As such, their use in the later arrest by State Police, was no less "fruit of the poisonous tree" than any other violation subject to the exclusionary rule where evidence obtained illegally through state action must be suppressed.

To hold otherwise renders meaningless the primary holding of this case. The effect would be to allow these agents to continue to "arrest" and detain any citizen so long as the ultimate arrest is conducted by a police officer with the proper authority acting on information supplied by the illegally acting Agent. This result is ludicrous and flies in the face of the principles we established in *Commonwealth*

*v. Corley,* 507 Pa. 540, 491 A.2d 829 (1985), wherein this Court set forth an exhaustive examination of the principles of state action and the application of the exclusionary rule. Those considerations, ignored by the majority today, require a court to determine the relationship of the individual committing the wrongful action and his relationship to the state. Under the *Corley* principles, it is clear that the agent's actions were inseparable from the State and the evidence obtained therefrom must be suppressed. The majority has, however, completely ignored the precedent established in *Corley* in favor of an ad hoc ratification of illegal state action to validate the prosecution of an otherwise illegally detained person.

As a reading of *Corley* would establish, the instant situation must be viewed in a different light than that of a private individual attempting a citizen's arrest. In that instance the citizen is not acting, nor holding himself out as acting, as an agent for the state. As such, responsibility for his actions must rest solely on that citizen. Indeed, the record indicates that the Agent was not making a citizen's arrest, but was acting solely upon powers he felt he possessed as an agent of the Attorney General. (Opinion, p. 1046). The flaw in the majority's reasoning is in ignoring this distinction. Either the arrest was effectuated by a private citizen or a duly authorized agent of the state. Since neither applies to the facts of this case, the arrest was illegal ab initio and no subsequent action can erase the taint.

In the present case, were we to ratify and allow illegal State action by likening it to a citizen's arrest, we would also, as a secondary and unwanted effect, open the state up to untold civil liability were the effects of these "citizen's arrests", less than correct or successful.

Instead, I think the more prudent path is to emphasize to the Attorney General that he has specific, enumerated powers and to act ultra vires those powers will only frustrate the law enforcement scheme which has already been legislatively and constitutionally established. This is the

primary purpose of the exclusionary rule and that purpose is no better served nor its application less warranted than upon the facts presently before us.

I therefore dissent from the majority's validation of the arrest of Appellee based upon information supplied by the agent for the Attorney General.

LARSEN, J., joins in this dissenting opinion.