617 A.2d 15

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**John F. FROMBACH, Appellee.**

Superior Court of Pennsylvania.

Argued June 16, 1992.

Filed Nov. 18, 1992.

Anthony R. Himes, Asst. Dist. Atty., Erie, for Com., appellant.

David G. Ridge, Erie, for appellee.

Before WIEAND, DEL SOLE and HESTER, JJ.

WIEAND, Judge:

John F. Frombach was arrested and charged with driving while under the influence of alcohol and disorderly conduct after he attempted to avoid a sobriety checkpoint set up by police in Erie County. The trial court suppressed evidence obtained following the stop of Frombach's vehicle by a County Detective on grounds that the County Detective lacked authority to enforce the provisions of the Vehicle Code. The Commonwealth, certifying that the suppression order substan-

tially handicapped its prosecution of Frombach, filed the instant appeal.[1]

█ The Pennsylvania Supreme Court has recently discussed the standard of review to be applied in deciding an appeal taken by the Commonwealth from an order suppressing evidence in the following manner:

> We begin by noting that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. Pa.R.Crim.P. 323(h). *See Commonwealth v. Iannaccio,* 505 Pa. 414, 480 A.2d 966 (1984), *cert. denied,* 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985). In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. *Commonwealth v. Monarch,* 510 Pa. 138, 147, 507 A.2d 74, 78 (1986). If so, we are bound by those findings. *Commonwealth v. James,* 506 Pa. 526, 533, 486 A.2d 376, 379 (1985). Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. James,* 506 Pa. at 532–33, 486 A.2d at 379; *Commonwealth v. Hamlin,* 503 Pa. 210, 216, 469 A.2d 137, 139 (1983).

*Commonwealth v. DeWitt,* 530 Pa. 299, 301–302, 608 A.2d 1030, 1031 (1992) (footnote omitted). See also: *Commonwealth v. Lagana,* 517 Pa. 371, 375–376, 537 A.2d 1351, 1353–1354 (1988); *Commonwealth v. Bagley,* 408 Pa.Super. 188, 193, 596 A.2d 811, 813 (1991). Where the factual findings of the suppression court are supported by the record, we may reverse only if the legal conclusions drawn therefrom are erroneous. See: *Commonwealth v. Whitney,* 511 Pa. 232, 239–240, 512 A.2d 1152, 1156 (1986); *Commonwealth v. Agnew,* 411 Pa.Super. 63, 71, 600 A.2d 1265, 1269 (1991).

The suppression court found the facts to be as follows:

1. The appeal is proper pursuant to *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985).

Larry Dombrowski is a County Detective in the Erie County District Attorney's Office and the DUI Coordinator therein. The District Attorney's Office has instituted written guidelines and policy for the establishment and operation of sobriety checkpoints (DUI roadblocks) in Erie County, which are in accordance with state and federal law.

On March 23, 1991, a DUI roadblock, requested by Chief Belden of the Albion Police Department, was approved and instituted at the intersection of East State Street and Orchard Street in Albion. Mr. Dombrowski, Erie County Sheriff's Deputy Robert Merski and Chief Belden were among those manning the roadblock. Approximately 600 to 700 feet prior to the roadblock was a well lit sign (at East Second and Orchard) announcing the roadblock ahead.

Testimony at the hearing, which this Court accepts as truthful, revealed that the defendant approached the sign announcing the checkpoint at a high rate of speed, stopped in the middle of the intersection and abruptly made a right turn without a proper signal upon observing the roadblock and sign. The vehicle immediately thereafter accelerated at a high rate of speed. County Detective Larry Dombrowski and Deputy Sheriff Robert Merski immediately activated the lights on the marked enforcement vehicle, pursued and pulled the defendant over.

. . . .

Upon stopping the vehicle Dombrowski testified it appeared the driver and passenger (a Betty Jo Chapman) were attempting to switch seats, observing that the defendant, although now in the passenger seat, still had his legs in the driver's well and vice versa [as to] Ms. Chapman.

When the defendant was asked to get out of the car he became uncooperative, loud and obnoxious. He refused to take a field sobriety test and threatened Deputy Merski with violence. When the deputy attempted to frisk the defendant for his own safety [the defendant] fled. County Detective Dombrowski testified he had to assist the deputy (who upon attempting capture had been put in a headlock

by the defendant). Dombrowski then placed the defendant under arrest for disorderly conduct. Dombrowski further related that the defendant had the strong odor of alcohol about his person and that he had observed empty beer bottles in the passenger compartment of the vehicle.

Chief Belden testified he originally observed the actions of the vehicle as it approached and then attempted to evade the DUI roadblock. A short time later when the defendant was arrested for disorderly conduct and brought to him at the roadblock he noted that the defendant had a strong odor of alcohol on his breath, bloodshot eyes, that he alternated yelling obscenities with crying (and other mood swings), that he once again refused to take any field sobriety tests and that he (Chief Belden) placed him under arrest for DUI.

Based upon these findings of fact, which are fully supported by competent evidence, the suppression court concluded that there had been reasonable suspicion to support a *Terry* stop of appellee's vehicle after he had attempted to avoid the sobriety checkpoint. The court also concluded that appellee's subsequent actions gave County Detective Dombrowski probable cause to arrest him, and that the county detective had legal authority to make an arrest for disorderly conduct. Additionally, the suppression court found that appellee's subsequent arrest for drunk driving, made by Police Chief Belden, was also supported by probable cause and in all other respects was legally proper. Nevertheless, the suppression court determined that County Detective Dombrowski lacked legal authority to enforce the provisions of the Vehicle Code. Therefore, the court held, his initial stopping of appellee's vehicle was unlawful. Based upon this conclusion, the court ordered the suppression of all evidence relevant to the charge of drunk driving which had been obtained between the time of the stop of appellee's vehicle and the time of his subsequent arrest for disorderly conduct.[2]

2. All evidence obtained after appellee's arrest for disorderly conduct was deemed by the suppression court to be admissible because County Detective Dombrowski had the legal authority to make an arrest for

■ The issue which is squarely before this Court, therefore, is whether a county detective has the authority to investigate possible Vehicle Code violations and otherwise enforce the provisions of the Vehicle Code. Recently, in *Commonwealth v. Leet,* 401 Pa.Super. 490, 585 A.2d 1033 (1991), *allocatur granted,* 529 Pa. 647, 602 A.2d 857 (1992), the Superior Court, sitting en banc, considered whether a deputy sheriff had the authority to make a warrantless arrest for a Vehicle Code violation which had occurred in his presence. A majority of the Court held that only police officers had been vested with authority to enforce the provisions of the Vehicle Code. In support of this holding, the Court reasoned as follows:

The language of the statute in this case is explicit. Enforcement of the Vehicle Code has been vested by the legislature in police officers. Sheriffs and deputy sheriffs are not police officers. Cf. *Venneri v. County of Allegheny,* 12 Pa.Commw. 517, 316 A.2d 120 (1974). A deputy sheriff has not been authorized to stop a motorist and make an arrest for a Vehicle Code violation, whether or not the violation has been committed in the deputy sheriff's presence.

. . . .

The Commonwealth would nevertheless have us revert to the common law to find general peacekeeping duties in the sheriff. Based on authority vested in sheriffs and deputy sheriffs by the common law, the Commonwealth argues that sheriffs and deputy sheriffs have inherent power and authority to arrest without a warrant for all crimes, however defined, committed in their presence, including Vehicle Code violations. We are unable to accept this reasoning. In the first place, an attempt to imply power where the same has not been granted by statute would be in direct violation of the legislature's mandate that sheriffs and deputy sheriffs shall perform the duties imposed by statute.

disorderly conduct, and his actions in doing so were supported by probable cause. Moreover, Police Chief Belden had both legal authority and probable cause to arrest appellee for drunk driving.

Moreover, although "the sheriff's power at early common law was indeed formidable, [ ] it is not tenable to carry over such a broad base of authority in the present [day]." *Venneri v. County of Allegheny, supra* at 523 n. 2, 316 A.2d at 124 n. 2. The encroachment of other institutions, including the expertise and technology of modern law enforcement agencies, has greatly diminished the authority of the office of sheriff. Today, the sheriff's principal function is as an arm of the court, which is the duty specifically assigned to the office of sheriff by the legislature.

*Commonwealth v. Leet, supra* 401 Pa.Super. at 496–498, 585 A.2d at 1037.

The suppression court, in the instant case, determined that a county detective is not a police officer, but a law enforcement officer and, as such, is not empowered to enforce the Vehicle Code. In reaching this conclusion, the suppression court relied upon the decision of the Supreme Court in *Commonwealth v. Galloway,* 525 Pa. 12, 574 A.2d 1045 (1990), where the Court determined that a special agent of the State Attorney General's office was not authorized to make arrests for violations of the Vehicle Code. The Court held that the sole powers of the Attorney General are set forth in the Commonwealth Attorney's Act,[3] which permits the Attorney General to investigate and prosecute only certain enumerated offenses. These enumerated offenses do not include Vehicle Code violations. *Commonwealth v. Galloway, supra* at 15–19, 574 A.2d at 1046–1048.

*Galloway,* however, is not controlling of the instant case. We cannot look for the authority of county detectives in the Commonwealth Attorney's Act. The question before this Court, rather, is whether a county detective has been designated by the legislature as a police officer so as to be authorized to enforce provisions of the Vehicle Code.[4]

3. Act of October 15, 1980, P.L. 950, No. 164, § 101 et seq., 71 P.S. § 732.101 et seq.

4. The Vehicle Code, at 75 Pa.C.S. § 6308(b), provides as follows:
   **(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has

"It is well settled that '[w]hen vesting a group with police powers and duties, the Legislature does so with specificity.'" *Allegheny County Deputy Sheriff's Association v. Pennsylvania Labor Relations Board,* 95 Pa.Cmwlth. 132, 135, 504 A.2d 437, 439 (1986), quoting *Commonwealth v. Pennsylvania Labor Relations Board,* 64 Pa.Cmwlth. 525, 532, 441 A.2d 470, 475 (1982), *affirmed in part and reversed in part,* 502 Pa. 7, 463 A.2d 409 (1983). See also: *Commonwealth v. Leet, supra* 401 Pa.Super. at 493, 585 A.2d at 1035. With respect to county detectives, the legislature has provided that they *"shall be general police officers* and shall have the powers conferred on constables by the laws of this Commonwealth, so far as they relate to criminal law and procedure." Act of August 9, 1955, P.L. 323, § 1440, 16 P.S. § 1440(d) (governing counties of the third through eighth class).[5] By the Act of June 4, 1897, P.L. 121, § 1, 13 P.S. § 45, the legislature has conferred upon constables the power to, "without warrant and upon view, arrest and commit for hearing any and all persons guilty of a breach of the peace, vagrancy, riotous or disorderly conduct or drunkenness, or may be engaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of the citizens, or violating any ordinances of said borough, for the violation of which a fine or penalty is imposed."

The Supreme Court has concluded that county detectives, having been classified by the legislature as policemen, possess the same collective bargaining rights as other policemen throughout the Commonwealth. See: *Hartshorn v. County of Allegheny,* 460 Pa. 560, 333 A.2d 914 (1975). See also: *Com-*

articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

5. Erie County is a county of the third class. The same powers have been conferred upon county detectives in counties of the first and second class by the Act of July 28, 1953, P.L. 723, art. XIV, § 1440, 16 P.S. § 4440(b) (2nd class counties) and by the Act of June 3, 1919, P.L. 369, § 1, as amended, 16 P.S. § 7741 (1st class counties).

*monwealth v. Gaudette,* 1 Pa. D & C. 4th 292, 293 (Northumberland County 1987), *aff'd,* 381 Pa.Super. 654, 548 A.2d 639 (1988) ("[A]s a general police officer, a county detective would have the right to execute a lawful arrest warrant."); Comment, Arrest And Search Powers Of Special Police In Pennsylvania: Do Your Constitutional Rights Change Depending On The Officer's Uniform?, 59 Temp.L.Q. 497, 498 and 507–508 (1986) ("Traditional police are government employees empowered by statute to enforce all commonwealth laws.... Today, traditional police in Pennsylvania include state police, municipal police, township police, borough police, and *county district attorneys' detectives.*") (emphasis added and footnotes omitted).

After careful review of the relevant legislative provisions and applicable case law, it appears that the legislature has expressed a clear intent to classify county detectives as police officers who possess general police power to enforce the laws of this Commonwealth. Therefore, we hold that county detectives are authorized to enforce the provisions of the Vehicle Code. It follows that the suppression court was in error when it held that County Detective Dombrowski lacked authority to stop appellee's vehicle after observing appellee attempt to avoid the sobriety checkpoint by abruptly making a right turn and fleeing at a high rate of speed. Dombrowski possessed reasonable suspicion that appellee was violating the Vehicle Code; and, therefore, pursuant to 75 Pa.C.S. § 6308, he was authorized to make a *Terry* stop of the vehicle for further investigation. See: *Commonwealth v. Metz,* 412 Pa.Super. 100, 602 A.2d 1328 (1992).

Order reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.