**NARCOTICS AGENTS REGIONAL COMMITTEE, Pennsylvania Fraternal Order of Police Lodge No. 74, Petitioner,**

v.

**PENNSYLVANIA LABOR Relations Board, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2003.

Decided Oct. 6, 2003.

Gary M. Lightman, Harrisburg, for petitioner.

John B. Neurohr, Harrisburg, for respondent.

Before PELLEGRINI, J., LEADBETTER, J., and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Narcotics Agents Regional Committee, Pennsylvania Fraternal Order of Police Lodge No. 74 (Union) petitions for review of the Final Order of the Pennsylvania Labor Relations Board (Board) dismissing its exceptions to, and making absolute and final, the Proposed Order of Dismissal of the Board's Hearing Examiner which dismissed a joint request for certification filed by the Union and the Office of Attorney General (Employer). We affirm.

On February 13, 2002, the Union and Employer filed a joint request for certification with the Board which requested that the Union be certified under the Collective Bargaining by Policemen or Firemen Act

(Act 111)[1] as the exclusive representative of the bargaining unit comprised of Narcotics Agents I and II (Agents) employed in Employer's Bureau of Narcotics Investigation (BNI).[2] The request alleged, *inter alia*, that Section 206(a) of the Commonwealth Attorneys Act[3] empowered Employer to investigate any violations of the

1. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10.

2. Pursuant to a nisi order of certification issued by the Board on October 25, 1999, the Board certified the Union, then known as the Attorney General Investigators Association, as the Agents' exclusive representative under the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301 (PERA).

3. Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. § 732–206(a). Specifically, Section 206(a) provides, in pertinent part:

> **(a) Law enforcement; criminal investigations.**—The Attorney General shall be the chief law enforcement officer of the Commonwealth ... The Attorney General shall have the power to investigate any criminal offense which he has the power to prosecute under section 205; he shall continue the existing programs relating to drug law enforcement. The Pennsylvania State Police shall cooperate with the Attorney General and furnish such services as the Attorney General shall request.

In turn, Section 205 of the Commonwealth Attorneys Act provides, in pertinent part:

> **(a) Prosecutions.**—The Attorney General shall have the power to prosecute in any county criminal court the following cases:
>
> (1) Criminal charges against State officials or employees affecting the performance of their public duties or the maintenance of the public trust and criminal charges against persons attempting to influence such State officials or employees or benefit from such influence or attempt to influence.
>
> (2) Criminal charges involving corrupt organizations as provided for in 18 Pa. C.S. § 911 (relating to corrupt organizations).
>
> (3) Upon the request of a district attorney who lacks the resources to conduct an adequate investigation or the prosecution of the criminal case or matter or who represents that there is the potential for an actual or apparent conflict of interest on the part of the district attorney or his office.
>
> (4) The Attorney General may petition the court having jurisdiction over any criminal proceeding to permit the Attorney General to supersede the district attorney in order to prosecute a criminal action or to institute criminal proceedings ... Supersession shall be ordered if the Attorney General establishes by a preponderance of the evidence that the district attorney has failed or refused to prosecute and such failure or refusal constitutes abuse of discretion.
>
> (5) When the president judge in the district having jurisdiction of any criminal proceeding has reason to believe that the case is a proper one for the intervention of the Commonwealth, he shall request the Attorney General to represent the Commonwealth in the proceeding and to investigate charges and prosecute the defendant. If the Attorney General agrees that the case is a proper one for intervention, he shall file a petition with the court and proceed as provided in paragraph (4) ...
>
> (6) Criminal charges investigated by and referred to him by a Commonwealth agency arising out of enforcement provisions of the statute charging the agency with a duty to enforce its provision.
>
> (7) Indictments returned by an investigating grand jury obtained by the Attorney General.
>
> (8) Criminal charges arising out of activities of the State Medicaid Fraud Control Unit as authorized by ... [the] act of June 13, 1967 (P.L. 31, No. 21), known as the "Public Welfare Code", and the Federal law known as the "Medicare–Medicaid Antifraud and Abuse Amendments".
>
> **(b) Concurrent jurisdiction to prosecute.**—The Attorney General shall have the concurrent prosecutorial jurisdiction with the district attorney for cases arising under subsection (a)(1), (2) and (6) and may refer to the district attorney with his consent any violation or alleged violation of the criminal laws of the Commonwealth which may come to his notice.

71 P.S. § 732–205(a), (b).

law which may come to its notice. Likewise, it was alleged that the Agents, acting through BNI, are empowered to investigate any violations of the law while working for Employer. As a result, the request alleged that the Agents should be recognized as possessing general police powers within the purview of Act 111, and that they should be able to collectively bargain as "police officers" under its provisions. The matter was assigned to a Hearing Examiner, and the Union and Employer entered into a joint stipulation of facts.

On July 16, 2002, the Hearing Examiner issued a Proposed Order of Dismissal in which he determined that the Agents of BNI are not "police officers" within the purview of Act 111. In reaching this determination, the Hearing Examiner relied on *Commonwealth v. Galloway*, 525 Pa. 12, 574 A.2d 1045 (1990), in which the Pennsylvania Supreme Court determined that agents in Employer's Bureau of Criminal Investigations were not "police officers" within the purview of Act 111.[4]

On July 30, 2002, the Union filed exceptions to the Hearing Examiner's Proposed Order of Dismissal. On January 28, 2003,

the Board issued the instant Final Order dismissing the Union's exceptions to, and making absolute and final, the Hearing Examiner's Proposed Order of Dismissal. The Union then filed the instant petition for review.

In this appeal, the Union claims that the Board erred in denying the joint petition for representation requesting that the Union be certified under Act 111 as the exclusive representative of the Agents' bargaining unit. Specifically, the Union acknowledges that, in *Galloway*, the Supreme Court determined that the agents in the Bureau of Criminal Investigations are not "police officers" within the purview of Act 111. However, the Union asserts that the opinion in *Galloway* is not binding precedent as it is a plurality opinion. In addition, the Union contends that *Galloway* is inapposite as that case involved agents in the Bureau of Criminal Investigations, and this case involves agents in BNI.

We initially note that this Court's scope of review of the Board's order is limited to determining whether there was a violation of constitutional rights, an error

---

4. Specifically, in determining that the agents in Employer's Bureau of Criminal Investigation are not "police officers" within the scope of Act 111, the Supreme Court stated the following, in pertinent part:

> [W]e agree that the Attorney General and his agents are empowered to apply for warrants and to make arrests in those instances where an investigation or prosecution is undertaken pursuant to [Section 205 of the Commonwealth Attorneys Act, 71 P.S.] § 732–205. Obviously, that arrest power is designed to facilitate the investigative and prosecutorial aims of the Attorney General's office. But the power is limited thereby, and we will not read the statute to expand the scope of that power beyond the bounds of the legislative intent underlying it. The specific issue to be decided here is whether those arrest powers, invested in a "law enforcement" officer for purposes of

investigating and prosecuting offenses listed in [Section 205], are also of a general nature in the same sense by which municipal police officers and the State Police are authorized by statute to arrest as "police officers". Neither the language of the [Commonwealth Attorneys] Act itself, its legislative history, nor case law convinces us that there is any reasonable interpretation of the [Commonwealth Attorneys] Act which allows the Attorney General to arrest for offenses outside of those contemplated by the primary purpose behind the statute. The power of arrest under the [Commonwealth Attorneys] Act is limited to those actions which fall within the "scope of employment" as defined and circumscribed by the specific offenses in [Section 205]. The Attorney General is a "law enforcement officer" and not a "police officer".

*Galloway*, 525 Pa. at 18, 574 A.2d at 1048.

of law, or whether the necessary findings of fact are supported by substantial evidence. *Cambria County Deputy Sheriffs Association v. Pennsylvania Labor Relations Board,* 799 A.2d 957 (Pa.Cmwlth. 2002); *Delaware County Lodge No. 27, Fraternal Order of Police v. Pennsylvania Labor Relations Board,* 690 A.2d 754 (Pa. Cmwlth.), *petition for allowance of appeal denied,* 548 Pa. 674, 698 A.2d 597 (1997). In addition, in determining whether a unit of employees is comprised of "police officers" within the purview of Act 111, the Board and this Court apply a two-part test that requires that the particular employees: (1) be legislatively authorized to act as police; and (2) effectively act as police. *Cambria County Deputy Sheriffs Association; Delaware County Lodge No. 27.*

█ In the instant case, even if it is assumed that *Galloway* is not dispositive, the Union's assertion that the Agents are legislatively authorized to act as "police officers" is patently incorrect. In 1972, the General Assembly enacted the Controlled Substance, Drug, Device and Cosmetic Act (CSDDCA)[5] which provides, in pertinent part:

(a) Except as may be otherwise provided by law, the provisions of this act shall be administered by the [Department of Health (department)] . . .

(b) The [Secretary of Health (secretary)] is authorized and directed to establish a Bureau of Drug Control within the department and to employ therein sufficient personnel to perform the duties imposed upon the department by this act.

(c) The secretary may designate specific officers and employes of the Bureau of Drug Control as law enforcement personnel and authorize such personnel to:

(1) Carry firearms in the performance of his official duties;

(2) Execute and serve search warrants, arrest warrants, administrative inspection warrants, subpoenas, and summonses issued under the authority of the Commonwealth;

(3) Make arrests without warrant for any offense under this act committed in his presence, or if he has probable cause to believe that the person to be arrested has committed or is committing a violation of this act which may constitute a felony;

(4) Make seizures of property pursuant to this act; or

(5) Perform other law enforcement duties as the secretary designates.

(d) Nothing contained herein shall be deemed to limit the authority of the Bureau of Drug Control, the Pennsylvania State Police, the Department of Justice or any other law enforcement agency in dealing with law enforcement matters with respect to persons engaged in the unlawful importation, manufacture, distribution, sale and production of controlled substances, other drugs or devices or cosmetics nor the authority of the council in performing any duties imposed upon it by the "Pennsylvania Drug and Alcohol Abuse Act".[6]

35 P.S. §§ 780–134. Thus, in Section 34, the General Assembly specifically authorized the Secretary of the Department of Health to establish a Bureau of Drug Control to enforce the provisions of the CSDDCA, and bestowed upon the employees of that bureau limited law enforcement powers to enforce the act.

---

**5.** Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§ 780–101–780–144.

**6.** Act of April 14, 1972, P.L. 221, *as amended,* 71 P.S. §§ 1690.101–1690.115.

In 1973, the General Assembly enacted Reorganization Plan No. 6 of 1973[7] which provides, in pertinent part:

> **Section 1.** The functions, powers and duties of the Department of Health and the Secretary of Health with regard to the establishment and operation of the Bureau of Drug Control, as set forth in subsections (b), (c) and (d) of section 34 [of the CSDDCA] are transferred to the Department of Justice and the Attorney General.
>
> **Section 2.** There are hereby transferred to the Department of Justice to be used, employed and expended in connection with the functions, powers and duties transferred by section 1 of this Reorganization Plan, contract obligations, if any, property, supplies, equipment, records and files now being used or held in connection with such functions, powers and duties; the personnel employed in connection with such functions, powers and duties; and the unexpended balances of appropriations, allocations and any other funds available or to be made available for use in connection with such functions, powers and duties.
>
> **Section 3.** Subsections (b), (c) and (d) of section 34 [of the CSDDCA] are suspended in so far as they conflict with this Reorganization Plan.

> **Section 4.** This Reorganization Plan shall take effect July 1, 1973.

71 P.S. § 751–18. Thus, through Reorganization Plan No. 6 of 1973, the General Assembly merely transferred the functions, powers and duties of the Bureau of Drug Control from the Department of Health to the Attorney General's Office.

■ It was within this context that the General Assembly enacted the Commonwealth Attorneys Act in 1980.[8] As noted above, Section 206(a) provides, in pertinent part, that "[t]he Attorney General shall have the power to investigate any criminal offense which he has the power to prosecute under section 205; *he shall continue the existing programs relating to drug law enforcement* ..." 71 P.S. § 732–206(a) (emphasis added). Thus, the provisions of Section 206(a) specifically incorporate BNI's limited law enforcement powers that were transferred to the Attorney General from the Department of Health in 1973.

As a result, contrary to the Union's assertion, the Agents are not legislatively authorized to act as "police officers". Rather, pursuant to the provisions of the CSDDCA, the Reorganization Plan No. 6 of 1973, and the Commonwealth Attorneys Act, the Agents of BNI possess limited law enforcement powers.[9] Thus, it is clear

---

**7.** Act of July 1, 1973, P.L. 463, *as amended*, 71 P.S. § 751–18.

**8.** It is well settled that statutes *in pari materia* shall be construed together, if possible, as one statute. *See, e.g.*, Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932; *Mid–State Bank and Trust Co. v. Globalnet International, Inc.*, 710 A.2d 1187, 1193 (Pa.Super.1998), *aff'd*, 557 Pa. 555, 735 A.2d 79 (1999) ("[I]t is well-settled that statutes or parts of statutes which relate to the same persons or things or the same classes of persons or things must be construed together, insofar as possible, as one statute.") (citation omitted).

**9.** *See, e.g., Commonwealth v. Carsia*, 512 Pa. 509, 513, 517 A.2d 956, 958 (1986) ("[I]n our view, the use of the language 'as may be imposed' [in Article IV, Section 4.1 of the Pennsylvania Constitution] clearly shows an extension of power to the legislature to statutorily define and regulate the powers and duties of the Attorney General. The General Assembly utilized that grant of constitutional powers in 1980, and enacted the Commonwealth Attorneys Act. That Act made it clear that the powers of the state Attorney General are no longer an emanation from some bed of common law precepts, but are now strictly a matter of legislative designation and enumer-

that the Board did not err in determining that the Agents were not "police officers" within the purview of Act 111. *See, e.g., Delaware County Lodge No. 27, Fraternal Order of Police,* 690 A.2d at 757 ("[T]he [two-part] test applied by the [Board] and this Court to determine whether an employee is a 'police' officer for purposes of Act 111, is a conjunctive test which requires that both prongs be satisfied. An inquiry into the duties performed by certain employees is necessary only after it has been established that the employees have been legislatively authorized to act as police ..."). In short, the Board did not err in dismissing the exceptions to, and making absolute and final, the Hearing Examiner's Proposed Order of Dismissal which dismissed the joint request for certification.

Accordingly, the order of the Board is affirmed.

### *ORDER*

AND NOW, this 6th day of October, 2003, the order of the Pennsylvania Labor Relations Board, dated January 28, 2003 at No. PF–R–02–23 E, is affirmed.

ation. Section 201(a) of the Act declares that: The Office of Attorney General shall be an independent department.... The Attorney General shall exercise such powers and perform such duties as are hereinafter set forth. (Emphasis added.) 71 P.S. § 732–201(a). This provision expressly states that the powers of the Attorney General are those which are set forth in the Act itself ...").