1999 PA Super 5

COMMONWEALTH of Pennsylvania,
Appellant

v.

Thomas P. BRADLEY, Appellee.

Superior Court of Pennsylvania.

Argued May 13, 1998.

Filed Jan. 12, 1999.

**352**

A. Sheldon Kovach, Asst. Dist. Atty., Media, for the Com., appellant.

Andrew Donaghy, Media, for appellee.

Before McEWEN, President Judge, and DEL SOLE, KELLY, POPOVICH, FORD ELLIOTT, JOYCE, MUSMANNO, ORIE MELVIN and SCHILLER, JJ.

MUSMANNO, J.:

¶ 1 The Commonwealth appeals from the trial court's Order suppressing evidence in this case in which Appellee Thomas Bradley ("Bradley") was prosecuted for driving under the influence. *See* 75 Pa.C.S.A. § 3731. We affirm.

¶ 2 Bradley was arrested on May 30, 1996 for driving under the influence of alcohol. He filed a pre-trial Motion to Suppress claiming that his arrest was illegal and that, therefore, all evidence against him obtained following that arrest should be suppressed.

The trial court granted the Motion to Suppress. The Commonwealth requested that the trial court reconsider its suppression ruling, but the trial court denied that request. The Commonwealth then filed this timely appeal.[1]

¶ 3 Joseph Daly ("Daly"), the Superintendent of the police department of Lower Merion Township, testified at Bradley's suppression hearing that, on May 30, 1996, he was off-duty and was in Haverford Township driving to his home. Daly stated that, at 10:05 p.m., he observed in front of him an automobile, driven by Bradley, swerve into the opposite lane of traffic. Daly testified that he was concerned for other motorists on the road; therefore, he called the Haverford Township Police Department on his car radio. Daly said that he followed Bradley and continually updated the Haverford Township Police Department concerning Bradley's location and direction of travel.

¶ 4 Daly testified that he then saw Bradley make two more exaggerated turns, drive on the wrong side of the highway, and nearly strike a telephone pole. Daly said that, when Bradley pulled into a church parking lot and stopped, Daly parked his car in front of Bradley's. According to Daly, he then walked to Bradley's vehicle, opened the door, turned off the engine, and took Bradley's keys. Daly testified that, after Bradley asked Daly what the problem was, Daly told Bradley that he was an off-duty police officer and that Haverford Township police officers were coming to the scene. Daly then told Bradley to sit there and not to cause any trouble. Daly kept Bradley under observation while waiting for the Haverford Township police officers to arrive. When Haverford Township police officers, Cheryl Williams and Charles Moore, arrived, Daly gave Bradley's keys to Officer Williams and told her of his observations.

¶ 5 Officer Williams testified at the suppression hearing that, when she approached Bradley's car, she detected a strong odor of

---

1. In an appeal of a suppression order, the Commonwealth is required to certify in its notice of appeal that the order will terminate or substantially handicap the prosecution. Pa.R.A.P. 311(d). In this case, the Commonwealth did not make that certification in its original Notice of Appeal filed on December 4, 1996. However, the Commonwealth filed an Amended Notice of Appeal, which contained the required certification.

alcohol and noticed that Bradley's eyes were bloodshot and glassy and that Bradley's speech was slow and slurred. Officer Moore testified that he conducted field sobriety tests on Bradley, which tests Bradley failed. Officer Williams then placed Bradley under arrest.

¶ 6 Bradley testified that he had had four alcoholic drinks on the evening of May 30, 1996. He stated that, as he was driving that night, he noticed that a car following him appeared to have on its high beams. Bradley said that he pulled into a church parking lot, thinking that a friend was following him. Bradley stated that, after the car that had been following him stopped in front of him, the driver approached Bradley, told Bradley that he was an off-duty police officer, and grabbed Bradley's keys. Bradley testified that he thought he was under arrest by a Haverford Township undercover police officer.

¶ 7 Daly's written statement, prepared at the request of the Haverford Township Police Department, was consistent with the testimony that Daly gave at the suppression hearing. In that statement, Daly indicated that, "[f]rom my 26 years of police experience, it was ... my opinion that the operation of the vehicle was consistent with that of someone under the influence of drugs or alcohol."

¶ 8 At the conclusion of the suppression hearing, the trial court determined that Daly had arrested Bradley illegally. On that basis, the trial court suppressed all evidence obtained after the arrest. The Commonwealth contends on appeal that, for the following reasons, the trial court erroneously granted Bradley's Motion to Suppress: (1) Daly acted as a private citizen and, therefore, legally arrested Bradley; and (2) Daly acted legally, even if not acting as a private citizen, because the interaction between Daly and Bradley was nothing more than a "mere encounter."

¶ 9 When reviewing an order granting a suppression motion, "we must consider only the evidence of the defendant's witnesses and so much of the evidence of the prosecution as, read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Francis*, 700 A.2d 1326, 1328 (Pa.Super.1997). If the evidence of record supports the trial court's findings, then an appellate court is bound by those findings and may reverse only if the legal conclusions drawn from them are erroneous. *Id.*

¶ 10 When a police officer acts under color of state law outside his jurisdiction, his actions are deemed unlawful pursuant to the Municipal Police Jurisdiction Act.[2] *Com-*

2. The Municipal Police Jurisdiction Act limits the authority of a police officer to make arrests and perform police functions outside his or her primary jurisdiction unless certain enumerated exceptions occur:

> (1) Where the officer is acting pursuant to an order issued by a court of record or an order issued by a district magistrate whose magisterial district is located within the judicial district wherein the officer's primary jurisdiction is situated, or where an officer is otherwise acting pursuant to the requirements of the Pennsylvania Rules of Criminal Procedure, except that the service of an arrest or search warrant shall require the consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which regularly provides primary police services in the municipality wherein the warrant is to be served.
> (2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh

pursuit of the person after the commission of the offense.
> (3) Where the officer has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance.
> (4) Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction.
> (5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

monwealth v. Price, 543 Pa. 403, 672 A.2d 280 (1996); Commonwealth v. Brandt, 456 Pa.Super. 717, 691 A.2d 934 (1997), appeal denied, 549 Pa. 695, 700 A.2d 437 (1997). In such circumstances, the exclusionary rule applies,[3] and any evidence obtained as a result of the officer's actions must be suppressed. Brandt, 691 A.2d at 939. The exclusionary rule applies even if the police officer acts in good faith or the police officer's actions would have been lawful if performed within the proper jurisdictional limits. Id.

¶ 11 In its first argument, the Commonwealth does not dispute that Daly acted outside his proper jurisdiction. Nor does the Commonwealth dispute that, if Daly, acting under color of state law, arrested Bradley, then Daly acted without authority under the Municipal Police Jurisdiction Act. Rather the Commonwealth contends that Daly, assuming that he arrested Bradley, acted legally because he acted, not under color of state law, but as a private citizen.

¶ 12 Our Supreme Court has determined that a law enforcement officer acts under color of state law if, "in light of all the circumstances, [the officer] must be regarded as having acted as an 'instrument' or agent of the state." Price, 543 Pa. at 410, 672 A.2d at 283 (quoting Corley, 507 Pa. at 548, 491 A.2d at 832). In Price, an FBI agent had stopped the defendant after the defendant had failed to stop his vehicle at a stop sign and had swerved into oncoming traffic. 543 Pa. at 406, 672 A.2d at 281. The agent had used the police lights and siren on his unmarked vehicle to stop the defendant, identified himself to the defendant as an FBI agent, and showed the defendant his badge. Id., 672 A.2d at 281. In addition, after smelling the odor of alcohol emanating from the defendant, the agent told the defendant to remain seated in his vehicle. Id., 672 A.2d at 281. Local police officers then came to the scene

and arrested the defendant on a charge of driving under the influence, a misdemeanor offense. Id., 672 A.2d at 281.

¶ 13 The Court in Price first noted that, pursuant to a federal statute, an FBI agent, if acting in a law enforcement capacity, is not authorized to make an arrest for a misdemeanor offense without a warrant. See id. at 407, 672 A.2d at 282 (citing 18 U.S.C. § 3052). Thus, the Court stated that, because the agent had arrested[4] the defendant for a misdemeanor offense without a warrant, the arrest could have been legal only if the agent acted as a private citizen. See Price, 543 Pa. at 407–08, 672 A.2d at 282. The Court then held that, because the agent had used the lights and siren on his car and showed his FBI badge, the agent had engaged in conduct which "could be fairly attributed to the state." Id. at 411, 672 A.2d at 284. The Court therefore concluded that the arrest was illegal and all evidence obtained thereafter should have been suppressed. Id. at 413, 672 A.2d at 285.

¶ 14 Earlier, in Commonwealth v. Eshelman, 477 Pa. 93, 383 A.2d 838 (1978), our Supreme Court determined that an off-duty auxiliary police officer, outside his proper jurisdiction, acted "as a police officer," not as a private citizen, when he found packages of marijuana in a car belonging to the defendant on the property of the defendant's grandmother. Id. at 101, 383 A.2d at 842. Apparently, the officer had been looking for a friend of his on the property when he stumbled upon the car and found the packages inside. Id. at 96, 383 A.2d at 839. The officer then took one package to his police department and then to state police barracks where it was determined that the package contained marijuana. Id. at 96–97, 383 A.2d at 839–40.

(6) Where the officer views an offense which is a felony, or has probable cause to believe that an offense which is a felony has been committed, and makes a reasonable effort to identify himself as a police officer.

See 42 Pa.C.S.A. § 8953 (West 1982 and West Supp.1998). The Commonwealth agrees that none of the exceptions listed in Section 8953 apply in this case.

3. The exclusionary rule derives from the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Brandt, 691 A.2d at 939; see also Commonwealth v. Corley, 507 Pa. 540, 491 A.2d 829 (1985).

4. The Court apparently assumed that the agent, and not the local police, actually "arrested" the defendant.

¶ 15  The Court noted that the officer, if acting as a police officer, was "without authority" under the Municipal Police Jurisdiction Act to search the defendant's car. *Id.* at 101, 383 A.2d at 842. The Court then ruled that the officer "was acting as a police officer when he removed the package and turned it over to the police" both because the officer had testified that the packages looked suspicious to him based on information he had received at his police station concerning the manner in which marijuana typically is packaged, and also because the officer had taken the package to the police station to be opened. *Id.* at 100–01, 383 A.2d at 841–42. The Court thus determined that the evidence obtained by the officer should have been suppressed. *Id.* at 102, 383 A.2d at 842–43.

¶ 16  We have reviewed the record in this case and conclude that the evidence presented at Bradley's suppression hearing supports the suppression court's factual findings. Furthermore, based on the applicable law that we have recited, we hold that the suppression court correctly determined that Daly acted illegally with regard to Bradley's arrest.

¶ 17  Daly stated that, based on his twenty-six years of experience as a police officer, he had concluded that Bradley was driving while intoxicated. Moreover, Daly's actions after reaching that conclusion (*e.g.*, maintaining radio contact with the Haverford Township Police Department, following Bradley, stopping in front of Bradley's car, identifying himself as a police officer, taking Bradley's keys, and ordering Bradley to remain in the car while waiting for additional police officers to arrive) are consistent with those of a police officer who has been trained to conduct traffic stops and deal with intoxicated drivers. Thus, we conclude that Daly "acted as an 'instrument' of the state," not as a private citizen, with respect to Bradley's arrest. *See Price*, 543 Pa. at 410–11, 672 A.2d at 283–84. The suppression court, therefore, properly suppressed evidence obtained after Bradley's arrest.

¶ 18  In its second argument, the Commonwealth contends that, even if Daly acted

under color of state law, his actions with respect to Bradley were legal because Bradley voluntarily stopped his car and, thereafter, Daly only briefly detained Bradley until the Haverford Township police officers arrived, obtained evidence of Bradley's intoxication, and then arrested Bradley. In essence, the Commonwealth argues that Daly engaged in only a "mere encounter" with Bradley, which did not constitute a seizure of Bradley within the meaning of the Fourth Amendment to the United States Constitution.

¶ 19  We first note that contact between an individual and a police officer can be characterized as a mere encounter, a non-custodial or investigative detention, a custodial detention, or a formal arrest. *See Commonwealth v. Peters*, 434 Pa.Super. 268, 642 A.2d 1126, 1129 (1994), *appeal denied*, 538 Pa. 668, 649 A.2d 670 (1994). A mere encounter with a police officer does not constitute a seizure under the Fourth Amendment and, therefore, triggers no constitutional protections. *Peters*, 642 A.2d at 1129. Investigative and custodial detentions, and formal arrests, however, are seizures implicating constitutional rights. *Id.*

¶ 20  In this case, we conclude that, even if Daly did not "arrest" Bradley as the suppression court determined, the evidence supports a conclusion that Daly at least engaged in an investigative detention of Bradley. An investigative detention occurs when a police officer temporarily detains a person by means of physical force or a show of authority for investigative purposes. *Id.*

¶ 21  Our Supreme Court, in *Commonwealth v. Mendenhall*, 552 Pa. 484, ——, 715 A.2d 1117, 1120 (1998), recently set forth the test to distinguish between an investigative detention and a mere encounter as follows: "[T]he pivotal inquiry is whether, considering all the facts and circumstances [surrounding an interaction between a police officer and an individual], a reasonable [individual] would have thought he was being restrained" by the police officer. *Id.*[5] If so, then an investiga-

---

5.  *See Mendenhall*, 552 Pa. at ——, 715 A.2d at 1120 (citing *United States v. Mendenhall*, 446

U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) ("[A] person has been 'seized' within the

tive detention has occurred. *See id.* If not, then a mere encounter has occurred. *Id.*

¶ 22 "The line between a mere encounter and an investigative detention cannot be precisely defined because of the myriad of daily situations in which policemen and citizens confront each other on the street." *Id.* at ——————, 715 A.2d at 1120–21 (quotations omitted). In *Mendenhall*, for example, a police officer left his proper jurisdiction to render aid and assistance at the scene of a vehicle accident. *Id.* at ——, 715 A.2d at 1118. Once there, the officer told the defendant, who apparently had been involved in the accident with his truck, to "stick around" until state police officers arrived. *Id.* at ————, 715 A.2d at 1118–19. While waiting for the state police officers, the defendant entered his truck and attempted to place several keys into the ignition. *Id.* at ——, 715 A.2d at 1119. The officer "did not attempt to restrain the defendant from trying to start his vehicle or otherwise restrict the defendant's movements in any other way." *Id.* at ——, 715 A.2d at 1119.

¶ 23 The Supreme Court determined that the police officer's actions constituted only a mere encounter with the defendant and not an investigative detention for the following reasons: "[N]othing in the record, aside from [the][o]fficer ... telling the defendant to 'stick around,' evidenced an exercise of force or demonstration of authority that would [have] indicate[d] to a reasonable person that [he or she was] not free to leave. Rather, the fact that the defendant freely moved in and out of his vehicle strongly suggests that a reasonable person in the defendant's shoes would [have felt] free to leave." *Id.* at ————————, 715 A.2d at 1120–21.[6]

¶ 24 Applying the test specified in *Mendenhall* to this case, we conclude that a reasonable person in Bradley's circumstances would have felt restrained by Daly's actions. Daly, by parking his car in front of Bradley's, telling Bradley he was an off-duty police officer, taking Bradley's keys, and telling Bradley to "sit there" and not cause any trouble, demonstrated authority such that a reasonable person would have thought that he or she was not free to leave the scene. *See id.* at ——, 715 A.2d at 1120.

¶ 25 We conclude, therefore, that at least an investigative detention occurred in this case. Accordingly, Bradley was protected from an illegal detention by the Fourth Amendment. Because Daly acted under color of state law and without authority under the Municipal Police Jurisdiction Act, he could not have detained Bradley legally. Thus, any evidence obtained after the illegal detention properly was suppressed by the trial court.

¶ 26 Order affirmed.

¶ 27 POPOVICH and JOYCE, JJ. file Dissenting Opinions.

¶ 28 ORIE MELVIN, J. joins Judge POPOVICH's Dissenting Opinion.

POPOVICH, J., dissenting:

¶ 1 I respectfully dissent from the opinion of the majority to the extent that it concludes Superintendent Joseph Daly acted as an instrument of the state, not as a private citizen, with respect to his encounter with appellee Thomas Bradley. Rather, I agree with the Commonwealth's argument that under the facts of this case, Superintendent Daly was acting as a private citizen and his conduct did not amount to state action. Therefore, I am convinced that the lower court erred when it suppressed all evidence derived from the off-duty, plain-clothes officer's conduct, and the exclusionary rule does not apply. Consequently, I would reverse the decision of the court below and remand for trial.

¶ 2 "When reviewing the Commonwealth's appeal from the decision of the suppression court, 'we must consider only the

---

meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.")).

**6.** The Court further reasoned that, because a driver has an affirmative duty under the Motor Vehicle Code, 75 Pa.C.S.A. § 3746, to remain at the scene of an accident, the officer's direction to the defendant to remain until the police arrived did not "in and of itself, turn the encounter into an investigative detention." *Mendenhall*, 552 Pa. at ————, 715 A.2d at 1120–21.

evidence of the ... appellee's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted.' *Commonwealth v. Baer*, 439 Pa.Super. 437, 654 A.2d 1058, 1058 (1995) (citation omitted). 'If the evidence supports the factual findings of the trial court, we are bound by such findings, and we may reverse only if the legal conclusions drawn therefrom are in error.' *Commonwealth v. Espada*, 364 Pa.Super. 604, 528 A.2d 968, 969 (1987) (citation omitted)." *Commonwealth v. Brandt*, 456 Pa.Super. 717, 691 A.2d 934, 936 (1997).

¶ 3 Herein, the Commonwealth raises the following issue for our consideration: "Whether the suppression court erred in ruling that an off-duty, out-of-jurisdiction police chief made an illegal arrest when while on his way home, he followed a car being driven in an erratic and reckless manner and when the car left the road and stopped, the chief pulled in front of it, removed the other car's keys from the ignition and instructed the driver to wait for the police who arrived momentarily." Commonwealth's Brief on Reargument, p.4. More to the point, the Commonwealth submits that "[t]he out of jurisdiction police officer's conduct did not constitute state action and, therefore, the exclusionary rule is inapplicable." Commonwealth's Supplemental Brief on Reargument, p. 2.[7]

¶ 4 In deciding that all evidence which resulted from Superintendent Daly's actions must be suppressed, the lower court reasoned:

Applying the principles set forth above, it is clear that Chief Daly displayed conduct which can fairly be attributable to the state and that Chief Daly must be regarded as having acted as an instrument or agent of the state rather than as a private citizen. Daily [sic] trailed the Defendant at such close proximity as to cause the Defendant to pull off the road (N.T., 11/4/96 at 37.) In an unmarked car owned by Lower Merion Township, (N.T., 11/4/96 at 9), Chief Daly pulled in front of defendant and blocked him. (N.T., 11/4/96 at 37.) Daly then got out of his car, walked over to the Defendant's car, opened Defendant's door and reached in, turned off the ignition and took the Defendant's keys (N.T., 11/4/96 at 11, 36.) According to his own testimony, Chief Daly identified himself as an off duty police officer and instructed the Defendant to "just sit there", explaining that the Haverford Township police were on their way. (N.T., 11/4/96 at 11.) Defendant agreed that Daly took his keys and identified himself as an off-duty police officer. (N.T., 11/4/96 at 36.) Of this encounter, Defendant stated, "And I didn't know – I thought I was under arrest ... I though it was a Havertown undercover agent or whatever." (N.T., 11/4/96 at 36.) Defendant further testified that "— within a minute, there was somebody there, there was an officer there." (N.T., 11/4/96 at 38.) Chief Daly used the radio to report his and the Defendant's location, drove an unmarked police car, caused the Defendant to pull over, block[ed] him, took Defendant's keys, identified himself as an officer and detained the Defendant with the uniformed Haverford Township police immediately on his tail. In essence, Chief Daly acted as an officer, not as a civilian, in depriving the Defendant of his freedom. Without jurisdiction, Chief Daly conducted an unlawful arrest.

Trial Court Opinion, pp. 7–8.

¶ 5 My review of the parties' briefs, the record, and pertinent case law reveals that the trial court, relying upon *Commonwealth v. Price*, 543 Pa. 403, 672 A.2d 280 (1996), erred when it suppressed all the evidence which the police seized following Superintendent Daly's actions. Upon the facts presented, I find that Superintendent Daly did not act as an instrument or agent of the state. Accordingly, I do not believe that the evidence derived from his actions should have been suppressed under the Fourth Amendment to the United States Constitution or Article 1, § 8 of the Pennsylvania Constitution.

---

7. The Commonwealth concedes that Superintendent Daly, an officer of the Lower Merion Police Department, was out of his jurisdiction and did not possess the statutory authority to stop or arrest Bradley in Haverford Township. *See* 42 Pa.C.S.A. §§ 8951–8954.

¶ 6   Presently, I agree with the Commonwealth's assertion that Superintendent Daly acted as a private citizen when he approached Bradley's vehicle, opened the car door, removed Bradley's keys from the ignition, identified himself as an off-duty police officer and informed Bradley that the Haverford Township Police had been notified. In so finding, I find the present facts distinguishable from those of similar cases such as *Price, supra, Commonwealth v. Kiner*, 697 A.2d 262 (Pa.Super.1997), *Commonwealth v. Bienstock*, 449 Pa.Super. 299, 673 A.2d 952 (1996) and *Commonwealth v. Gommer*, 445 Pa.Super. 571, 665 A.2d 1269 (1996), *allocatur denied*, 546 Pa. 676, 686 A.2d 1308 (1996).

¶ 7   In the present case, "[t]he critical factor for purposes of determining whether state action is involved is whether the private individual, in light of all the circumstances, must be regarded as having acted as an 'instrument' or agent of the state." *Price*, 672 A.2d at 283, citing *Commonwealth v. Corley*, 507 Pa. 540, 548, 491 A.2d 829, 832 (1985), citing *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564, 595 (1971). Where the relationship between the person committing the wrongful acts and the state is such that those acts can be viewed as emanating from the authority of the state, the principles established in *Corley, supra*, warrant a finding of state action. *Price*, 672 A.2d at 284. Upon comparison of the facts *sub judice* to those of similar cases, I am convinced that Superintendent Daly's involvement with Bradley did not rise to the level of state action, but were merely those of a responsible citizen who admirably demonstrated his concern for the safety of the public.

¶ 8   First, in *Price, supra*, our Supreme Court found that the actions of Special Agent Mark Sites of the Federal Bureau of Investigation amounted to state action when he stopped defendant James Price's vehicle, and evidence seized as a result of Agent Sites' actions should have been suppressed. After observing Price fail to stop at a stop sign and then swerve into on-coming traffic, Agent Sites activated the police lights and siren of his unmarked FBI vehicle and, eventually, stopped Price. Agent Sites identified himself as an FBI agent and showed Price his badge. Upon smelling the odor of alcohol upon Price, Agent Sites asked a nearby resident to call the police. Although Agent Sites never told Price he was under arrest, he did tell Price to not move and remain seated until the police arrived. After the local police arrived, Agent Sites briefed the officers on the events and, at their request, prepared a written report of the incident.

¶ 9   Applying the principles of *Corley, supra*, our Supreme Court stated:

> ...it is convincingly clear that Agent Sites here displayed conduct which can "fairly be attributable to the state" and that Agent Sites must be regarded as having acted as an "instrument" or agent of the state when he stopped Appellee. Despite the Commonwealth's assertion to the contrary, Agent Sites' use of the lights and sirens which were equipped on his unmarked government vehicle, together with his displaying of his FBI badge, is relevant, and, indeed, determinative of our conclusion that the instant case involves state action. It simply cannot be denied that Agent Sites' obvious display of authority when he stopped [Price] imbued his action with an official aura. As such, we cannot escape the conclusion that illegal state action was here involved and that no subsequent action can erase that taint.

*Price*, 672 A.2d at 284.

¶ 10   Presently, I acknowledge that Superintendent Daly did tell Bradley that he was an off-duty police officer and "to just sit there" and did remove Bradley's keys from the ignition. N.T., 11/4/96, pp. 11, 36. However, I am not convinced those acts alone are sufficient to elevate Superintendent Daly's acts from that of an ordinary citizen to that of the state. In my opinion, the acts that Superintendent Daly refrained from performing are more telling than those he performed. Superintendent Daly did not pull over appellant's vehicle. Rather, Bradley pulled his unmarked vehicle into the church parking lot upon the mistaken impression that "a friend or somebody who wanted [him]" was following his car. N.T., 11/4/96,

p. 36.[8] Superintendent Daly did not activate lights or sirens in his unmarked police car. He was in civilian clothing and did not show Bradley his police identification or badge. Superintendent Daly did not discuss the matter with Bradley, except to tell him "just to sit there and I [don't] want any trouble[.]" N.T., 11/4/96, p. 11. Finally, the first Haverford police officer arrived only moments after Superintendent Daly took Bradley's keys. Aside from Superintendent Daly's statement to Bradley that he was an off-duty police officer, there were insufficient indicia of official authority to warrant a finding of state action. Thus, the present case is readily distinguishable from *Price, supra,* where there was abundant evidence that Agent Sites' actions were "imbued ... with an official aura." *Price,* 672 A.2d at 284.

¶ 11 Likewise in the recent case of *Kiner, supra,* where this court found state action, the indicia of official authority were considerably greater than those before us now. In *Kiner, supra,* William Gephart, an off-duty state trooper, was driving his unmarked, private vehicle and noticed defendant Kenneth Kiner driving his vehicle erratically. The trooper followed Kiner into a parking lot and, when given the opportunity, approached Kiner's vehicle. The trooper then displayed his badge, his weapon and handcuffs and identified himself as a Pennsylvania State Trooper to Kiner. After smelling a strong odor of alcohol, Trooper Gephart ordered Kiner out of his vehicle and requested Kiner's driver license. The trooper then handcuffed Kiner, took his keys, ordered him to stand next to his vehicle and told him that he was "under detention" until an on-duty officer arrived because the trooper suspected Kiner of driving under the influence of alcohol. Trooper Gephart also physically restrained Kiner by holding his arm. After approximately twenty minutes, an on-duty officer arrived and arrested Kiner. Eventually, Kiner was convicted of driving under the influence of alcohol.

¶ 12 Upon review, we found that Trooper Gephart's actions amounted to an arrest of Kiner. Clearly, Trooper Gephart's action were "imbued ... with an official aura." *Price,* 672 A.2d at 284. Presently, Superintendent Daly's actions bear little parallel to those of Trooper Gephart. Superintendent Daly, other than informing Bradley that he was an off-duty police officer, did nothing to indicate that he was acting under authority conferred upon him by the state.

¶ 13 In *Bienstock, supra,* 449 Pa.Super. 299, 673 A.2d 952 (1996), we were presented with the question of whether an agent of the Pennsylvania State Police Bureau of Liquor Control Enforcement was acting as a private citizen when he performed a traffic stop of defendant Richard Bienstock. Therein, Officer Bradley Trusal noticed the defendant driving erratically and also observed that the front of the defendant's vehicle was smashed. Officer Trusal, who was travelling in an unmarked police vehicle, activated his siren, approached the defendant and directed him to pull his vehicle into a nearby parking lot. Finding the defendant incoherent with numerous conflicting stories about the damage to his vehicle, Officer Trusal radioed the state police for assistance. Later, the defendant was arrested by Trooper Marvin Wallace and charged with driving under the influence of alcohol.

¶ 14 Although there was no evidence of whether Officer Trusal identified himself as an officer, showed his badge or informed the defendant that he was under arrest, we affirmed the lower court's decision to suppress

---

8. To the extent that the lower court's decision to suppress the evidence herein was based upon its finding that Superintendent Daly "caused [Bradley] to pull over," I reject this finding of fact because it has absolutely no support in the record. *Brandt,* 691 A.2d at 936 (appellate court is not bound by factual findings for which there is no support in the record). While Superintendent Daly's act of following Bradley may have given rise to Bradley's mistaken belief that Daly was a friend, N.T., 11/4/96, p. 36, it did not "cause" Bradley to stop his vehicle. In other words, Superintendent Daly did not display any signs of official authority through which he compelled Bradley to stop his vehicle. Further, the lower court's finding of fact that Superintendent Daly "blocked" Bradley's vehicle also is not supported by the record. While it is clear that Superintendent Daly parked his car in front of Bradley's vehicle, it is equally clear that Bradley could have backed his vehicle out of the church parking lot onto a public road. N.T., 11/4/96, pp. 11, 36, 37.

the evidence seized as a result of Officer Trusal's actions because "there was sufficient indicia of official conduct for the trial court to find that Trusal's action constituted state action." *Bienstock*, 673 A.2d at 955. The fact that Officer Trusal actually demonstrated his official authority by activating his siren and directing the defendant where to stop his vehicle was dispositive. This is quite different from the present case where Bradley admittedly pulled into the church parking lot and stopped because he thought that "a friend or somebody who wanted [him]" was following his car. N.T., 11/4/96, p. 36. Clearly, under the present facts, *Superintendent Daly did not exhibit any official authority by which he compelled Bradley to stop his vehicle.*

¶ 15 The case most factually similar to the present case is that of *Gommer, supra.* Therein, Corporal Lisa Damore of the Pennsylvania State Police observed defendant Robert Gommer operating his vehicle in a reckless manner and followed him into a McDonald's restaurant. When Gommer pulled away from the "drive-thru" window, Corporal Damore, who was off-duty and not in uniform, signaled for him to pull over. She identified herself as a state trooper, directed him to await the arrival of other troopers, informed him that she believed he was operating his vehicle under the influence of alcohol and took possession of Gommer's keys so that he would no be able to leave the scene in his car. Based on those facts, we stated: "[E]ven though Corporal Damore was off duty and not in uniform, she conducted herself in an official manner and was acting as a police officer when she pulled over [Gommer's] vehicle." *Gommer*, 665 A.2d at 1273. Although we found that the officer was acting "acting within the scope of her employment as a member of the State Police when she stopped [Gommer's] vehicle for suspicion of drunk driving," we rejected Gommer's assertion that he was "arrested." *Gommer*, 665 A.2d at 1273. Rather, we found that the nature of the encounter was that of "a brief investigative detention." *Gommer*, 665 A.2d at 1273–1274.

¶ 16 Presently, I find that Superintendent Daly's actions did not even rise to the same level of official action as those of Corporal Damore. While Superintendent Daly identified himself as an off-duty police officer and took possession of Bradley's keys, he did not conduct himself in a manner consistent with that of a police officer acting within the scope of his official duties. Superintendent Daly did not direct Bradley to stop his vehicle, did not inform Bradley that he suspected him of driving while intoxicated and did not advise Bradley that he was under arrest.

¶ 17 Further, "[w]hether an arrest has been made is viewed in light of the reasonable impression conveyed to the person subjected to the seizure rather than in terms of the subjective views of the police officer making the arrest." *Kiner*, 697 A.2d at 265, quoting, *Commonwealth v. Carter*, 537 Pa. 233, 246, 643 A.2d 61, 67 (1994). Upon the facts before us, I reject Bradley's claim that it was reasonable for him to believe that he was under arrest. Other than telling Bradley that he was an off-duty police officer, Superintendent Daly displayed no evidence of official authority. I opine that a reasonable person confronted by a person claiming to be an off-duty police officer and, yet, showing no outward signs of authority, would at least request to view the person's identification or badge. Without making such a request, Bradley could not know whether Superintendent Daly was, as he claimed, an off-duty police officer, or a private citizen who claimed to be a police officer to avoid confrontation with Bradley while he waited for the police to arrive. Based upon the facts presented, I find that Bradley's belief that he was arrested by a "Havertown undercover agent" was not reasonable.

¶ 18 By my decision today, I do not intend to emasculate the Municipal Police Jurisdiction Act, 42 Pa.C.S.A. §§ 8951–8954, which limits municipal police officers' authority to act beyond their primary jurisdiction to six specific situations. *See* 42 Pa.C.S.A. § 8953(a); *Brandt*, 691 A.2d at 937. My decision does not give unfettered power to off-duty police officers in civilian clothing to act outside of their primary jurisdiction. Rather, I submit that we must scrutinize the particular circumstances of each case, and if state action exists, then the actions of the off-duty, out-of-jurisdiction officer must fall

within one of the six specifically enumerated cases set forth in the Municipal Police Jurisdiction Act. 42 Pa.C.S.A. § 8953(a). In the present case, unlike the majority, I believe that there is a dearth of indicia of authority, and I have concluded that Superintendent Daly was not a "state actor" at the time he took Bradley's keys. Consequently, I do not believe that the Municipal Police Jurisdiction Act applies.[9]

¶ 19  In sum, I opine that Superintendent Daly was not acting as "an instrument of the state" when he approached Bradley's stopped vehicle, identified himself as an off-duty police officer and seized the keys to Bradley's vehicle, since there was insufficient indicia of official authority. Superintendent Daly did that which every citizen should do when confronted with a possible drunk driver, and the mere coincidence that he was an off-duty police officer at the time does not warrant suppression of the evidence which was gathered as a result of his civic-minded actions. Accordingly, I would reverse the decision of the court below and remand for trial.

¶ 20  ORIE MELVIN, J. joins Judge POPOVICH's Dissenting Opinion.

9.  Recently, our Supreme Court rendered its decision in the case of *Commonwealth v. Mendenhall*, 552 Pa. 484, 715 A.2d 1117 (1998), wherein our high court held that an on-duty police officer who engages in a "mere encounter" with a defendant outside of his primary jurisdiction has not violated the Municipal Police Jurisdiction Act. In *Mendenhall, supra*, Officer Roofner, an on-duty policeman in uniform and driving a police cruiser, went to an accident scene outside of his jurisdiction to see if he could render first aid or other assistance. When he arrived, he saw a red pick-up truck smashed against a utility pole and Mendenhall standing along side the truck. Upon inquiry by Officer Roofner, Mendenhall admitted that he was the driver of the truck. The officer then informed Mendenhall to remain at the scene until the State Police arrived because his accident was reportable. Officer Roofner did not attempt to restrict Mendenhall's movements, and Mendenhall even entered the vehicle and attempted to place a key in the ignition of the truck. Upon arrival of a state trooper, Mendenhall was arrested for driving under the influence.

Based upon the "totality of the circumstances," our Supreme Court determined that Officer Roofner's and Mendenhall's interaction amounted to only a "mere encounter." Since there was not an out-of-jurisdiction "investigative detention" of Mendenhall by Officer Roofner, the

JOYCE, J., dissenting:

¶ 1  I respectfully disagree with the majority regarding suppressing the evidence obtained that Appellee, Thomas Bradley, was driving under the influence. The majority has determined that Superintendent Joseph Daly acted as an instrument of the state outside the scope of the Municipal Police Jurisdiction Act, 42 Pa.C.S.A. § 8953 when encountering Appellee, Thomas Bradley. I cannot agree.

¶ 2  The majority correctly set forth the standard of review and the requirements under the Municipal Police Jurisdiction Act.[10] However, the majority appears to overlook the key principles governing statutory interpretation. In relevant part, the statute provides:

(a) General rule—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those

Municipal Police Jurisdiction Act was not violated, and suppression of Mendenhall's blood alcohol test results and statements was not warranted. *Mendenhall*, 552 Pa. at ——, 715 A.2d at 1120.

Clearly, our Supreme Court, in *Mendenhall, supra*, did not address the issue which we face presently, to-wit: whether Superintendent Daly was a "state actor." In *Mendenhall, supra*, Officer Roofner was obviously vested with the authority of the state, given his arrival in a police cruiser and his appearance in a police uniform. However, I have herein determined that there were insufficient indicia of official authority to warrant a finding of state action. Thus, I need not reach the question presented in *Mendenhall, supra*, of whether there was an out-of-jurisdiction detention which violated the Municipal Police Jurisdiction Act, thus, warranting suppression.

10.  As an initial matter, I must note my agreement with the dissenting opinion of my distinguished colleague, Judge Popovich. I agree with his determination that Superintendent Daly acted as a private citizen in all respects throughout his encounter with Appellee. Even if Superintendent Daly was not acting as a private citizen, however, I write separately to voice my concerns over the majority's interpretation of the Municipal Police Jurisdiction Act.

functions within the territorial limits of his primary jurisdiction in the following cases:...

(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

42 Pa.C.S.A. § 8953(a)(5).

¶ 3 Our object is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(b); *Commonwealth v. Burnsworth*, 543 Pa. 18, 24, 669 A.2d 883, 886 (1995). In attempting to ascertain the meaning of a statute, we must consider the intent of the legislature and examine the practical consequences of a particular interpretation. *Commonwealth v. Davis*, 421 Pa.Super. 454, 618 A.2d 426, 428 (1992), *appeal denied*, 535 Pa. 630, 631 A.2d 1004 (1993). We presume the legislature did not intend a result that is absurd and unreasonable. *Id.* In construing legislative intent, this Court may look to the occasion and necessity of a statute, the circumstances in which it was intended, the mischief to be remedied, the object to be attained by the law, former law on the same subject and the consequences of a particular interpretation. *Id.*

¶ 4 It is undisputed that based on the conduct viewed, Appellee could have been stopped by a party with proper jurisdiction, i.e., either a private citizen or an on-duty police officer. The majority asserts, however, that an off-duty police officer acting outside his jurisdiction has no authority to take action either as a private citizen or as a police officer. I simply cannot agree that such a result was intended by the legislature when enacting this provision. *See Commonwealth v. Gommer*, 445 Pa.Super. 571, 665 A.2d 1269 (1995)(finding that under similar circumstances, State Police Officer could conduct official police business, despite being off-duty, where safeguards that attach to a driver being pulled over by on-duty police officer were present). Clearly, a finding to

the contrary would be absurd and unreasonable.

¶ 5 Further, the plain meaning of the statute governs. The statute provides that an officer who has probable cause to believe that a certain delineated offense has been committed, may enforce the laws of the Commonwealth. The statute does not indicate whether the officer must be on-duty at the time. We cannot find that such a requirement is mandated. Under these circumstances, I would find the trial court erred and reverse. Because the majority concluded otherwise, I respectfully dissent.