**COMMONWEALTH of Pennsylvania, Appellant**

**v.**

**Vincent DEMOR, Appellee.**

Superior Court of Pennsylvania.

Argued March 15, 2007.

Filed Jan. 7, 2008.

Reargument Denied March 13, 2008.

Michael W. Streily, Deputy Dist. Atty. and Kevin F. McCarthy, Asst. Dist. Atty., Pittsburgh, for the Com., appellant.

Paul D. Boas, Pittsburgh, for appellee.

BEFORE: JOYCE,* BENDER and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 In this Commonwealth appeal from the order granting the suppression motion of Appellee, Vincent Demor, the Court is presented with the question of whether an off-duty paramedic acts as an agent or

---

* Judge Joyce did not participate in the consideration or decision of this case.

instrument of the state in detaining a suspected drunk driver. Because we find that he does not, we reverse and remand.

¶ 2 While driving home in a minivan with his wife and children, off-duty paramedic Steven Cropelli called 911 to notify authorities that another driver, Appellee, was proceeding too slowly, swerving over the double yellow lines of a busy road, and nodding off at the wheel. At a traffic light, Mr. Cropelli, still in his uniform, pulled up next to Appellee, got out of his vehicle, signaled to Appellee, and asked him to turn into a nearby gas station parking lot.[1]

¶ 3 Mr. Cropelli testified that Appellee noticed the uniform and complied with the request without incident. Approaching Appellee, Mr. Cropelli identified himself as a paramedic and inquired whether Appellee was suffering from any medical problems and needed an ambulance. After Appellee responded in the negative, Mr. Cropelli announced that he intended to call 911 again and requested that Appellee shut off the engine and relinquish his car keys. Appellee complied, the police arrived shortly thereafter, and, after having concluded that Appellee was intoxicated, arrested him. He was subsequently charged with driving under the influence (DUI) and marijuana possession.

¶ 4 The trial court granted Appellee's motion to suppress, concluding after a hearing in which Mr. Cropelli's testimony was the only evidence presented, that he had acted under color of state law. The Commonwealth, having certified that its prosecution of the case was substantially handicapped, followed with this timely appeal, arguing that the trial court erred.

When reviewing an order granting a suppression motion, we must consider only the evidence of the defendant's witnesses and so much of the evidence of the prosecution as, read in the context of the record as a whole, remains uncontradicted. If the evidence of record supports the trial court's findings, then an appellate court is bound by those findings and may reverse only if the legal conclusions drawn from them are erroneous.

*Commonwealth v. Bradley,* 724 A.2d 351, 353 (Pa.Super.1999) *(en banc), appeal denied,* 560 Pa. 696, 743 A.2d 913 (1999) (citations and quotation marks omitted).

¶ 5 The crux of the Commonwealth's argument is that the paramedic did not act as an agent of the state. In *Commonwealth v. Corley,* 507 Pa. 540, 491 A.2d 829 (1985), our Supreme Court addressed whether a store security guard who detained and handcuffed a robbery suspect should have been considered a "state actor." *Id.* at 830, 832. The Court noted that the deprivation of a constitutional right may be fairly attributed to the state when two elements are met:

> First, the deprivation must be caused by the exercise of some right or privilege created by the state[.] Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because ... his conduct is otherwise chargeable to the state.
>
> * * *
>
> There are ... two parts to ... determining whether conduct may be attributed to the state, both of which must be established. The [United States] Supreme Court itself observed that "[a]l-

---

1. The Commonwealth contests the trial court's finding that Appellee was "ordered" to pull over, alleging that the testimony did not support such an inference. Indeed, the trial court describes Appellee as having complied with the "request," not "order" to pull over, as he did with "requests" to exit his vehicle and hand over his keys. (Trial Ct. Op. at 2).

though related these two principles are not the same. They collapse into each other when the claim of a constitutional deprivation is directed against a party whose official character is such as to lend the weight of the state to his decisions.... **The two principles diverge when the constitutional claim is directed against a party without such apparent authority, i.e., against a private party.**" *Id.* at 832–33 (emphasis original) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). "The critical factor [is] whether the private individual in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state." *Id.* at 832 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)) (internal quotation marks omitted). The Court concluded that because the security guard was a private party, his conduct could not be attributed to the state. *Id.* at 833.

¶ 6 Eleven years later, the Court in *Commonwealth v. Price*, 543 Pa. 403, 672 A.2d 280 (1996), addressed whether a special agent of the Federal Bureau of Investigations (FBI) should be considered a state actor. In *Price*, the FBI agent followed the appellant's vehicle for a short time, having observed it run through a stop sign and swerve wildly into the oncoming lane. The agent effectuated a traffic stop by activating his police lights and siren. He then detained the appellant by displaying his FBI badge upon approaching the appellant's vehicle and instructing him to remain inside. An *en banc* panel of this Court reversed the DUI conviction, concluding that the FBI agent was a state actor who had effectuated an illegal arrest. The Supreme Court affirmed the *en banc* panel's decision, finding that the FBI agent's use of his police lights, siren, and FBI badge was an "obvious display of authority when he stopped" the appellant. *Id.* at 284. In dissent, Justice Flaherty, joined by Justices Castille and Newman, objected to the majority's classification of the FBI agent's detention of the appellant as state action. Primarily, Justice Flaherty observed that "[f]ederal jurisdiction is not, of course, coterminous with state jurisdiction." *Id.* at 285.

¶ 7 A month after the *Price* decision, a panel of this Court in *Commonwealth v. Bienstock*, 449 Pa.Super. 299, 673 A.2d 952, 955 (1996), examined a stop conducted by a Liquor Control officer who, having observed the appellant's erratic driving, activated his siren and approached, directing the appellant to pull into a nearby parking lot. We found that the officer acted under color of state law while conducting a traffic stop, despite his lack of authority under the Pennsylvania Liquor Code to stop vehicles for traffic violations.

¶ 8 Three years later, an *en banc* panel of this Court applied *Price* to find that an off-duty police officer acted as an instrument of the state when investigating an intoxicated driver outside his jurisdiction. *See Bradley, supra.* According to the *Bradley* Court, although the off-duty officer had not pulled the appellant over, he had nevertheless acted as an instrument of the state by "stopping in front of [the appellant's] car, identifying himself as a police officer, taking [the appellant's] keys, and ordering [him] to remain in the car while waiting for additional police officers to arrive." *Id.* at 355. These actions were viewed as "consistent with those of a police officer who has been trained to conduct traffic stops and deal with intoxicated drivers." *Id.* Indeed, they could be characterized as similar conduct was by the *Price* Court, as imbued with the aura of officialdom. *Id.* at 284. As in *Price*, however,

dissenting judges in *Bradley* objected to the classification of the off-duty officer as a state actor, reasoning that the officer's having merely identified himself as an off-duty officer and taken the appellant's keys "were insufficient indicia of official authority to warrant a finding of state action." *Id.* at 359 (Popovich, J., dissenting).[2]

¶ 9 After reviewing these authorities, we are compelled to conclude that Mr. Cropelli cannot be seen as having acted otherwise than in a private capacity. We find our decision in this matter informed by *Corley* as the facts in that case approximate most closely the circumstances here, where the sole basis on which the trial court reached its decision seems to have been that Mr. Cropellli was wearing a uniform. That, however, is not sufficient to establish identity as a state actor, since Boy Scouts, among others, also wear uniforms with badges. Indeed, in *Commonwealth v. Mendenhall*, 552 Pa. 484, 715 A.2d 1117 (1998), our Supreme Court found, albeit under somewhat unique circumstances, that a uniformed, on-duty officer had not acted as an agent of the government in an out-of-jurisdiction encounter with an inebriated driver. As our Supreme Court explained in *Price, supra*, a finding of state action is dictated only "[w]here ... the relationship between the person committing the wrongful acts and the State is such that those acts can be viewed as emanating from the authority of the State." *Id.*

¶ 10 The situation here did not involve a person confronted with some "obvious display of [state] authority," *Price, supra*, that is, an easily identifiable indicium of such authority, e.g., sirens or a red flashing light, which has engendered a reasonable belief that he has been deprived of his liberty to leave by a legitimately empowered enforcement agent. Indeed, by way of comparison, the actions of the security guard in *Corley* were far more definitive: the guard not only stopped the appellant, but removed his jacket, handcuffed him, and removed him from a location outside the store to an in-store detention room. *Compare Price, supra* (FBI agent activated siren and showed appellant his badge); *Bienstock, supra* (Liquor Control officer activated siren to pull appellant over); *Bradley, supra* (authoritative conduct of off-duty officer in blocking appellant's car with his own, opening car door, turning off engine, and taking keys). *See also Commonwealth v. Galloway*, 525 Pa. 12, 574 A.2d 1045 (1990) (Special Agent of Attorney General's Office flashed red siren and used bullhorn to order appellant off roadway and out of his truck). Rather, after Appellee stopped, he was informed not only of Mr. Cropelli's profession as a health care provider, but also that the police were being summoned. No connection with law enforcement or regulatory authority was present or even remotely suggested by Mr. Cropelli's actions.

¶ 11 We reiterate that "[a] seizure implicating Fourth Amendment protections occurs only when, considering all the facts and circumstances, a reasonable person would have thought he was being restrained." *Mendenhall, supra* at 1120. Moreover, we again emphasize that a person acting in a private capacity lacks authority to effectuate traffic stops or arrests for summary offenses. *Bienstock, supra* at 955 n. 5. Mr. Cropelli's actions cannot have constituted an arrest, of whatever legitimacy, as there were insufficient indicia of official conduct inherent in his interaction with Appellee to permit a finding of

---

**2.** Judge Joyce also dissented on the basis that an off-duty officer acting outside his jurisdiction should have authority to conduct a traffic stop either as a private citizen or police officer. *Id.* at 362 (Joyce, J., dissenting).

state action. Because this is so, neither the Fourth Amendment's proscription against unreasonable searches and seizures nor any other fundamental constitutional right has been violated, and the exclusionary rule does not apply. *Price, supra.*

¶ 12 For the foregoing reasons, we reverse the order suppressing the evidence in this case and remand for further proceedings.

¶ 13 Order reversed; case remanded; jurisdiction relinquished.

¶ 14 Bender, J. files a Concurring Opinion.

## CONCURRING OPINION BY BENDER, J.:

¶ 1 As I agree that *Commonwealth v. Corley,* 507 Pa. 540, 491 A.2d 829 (1985), compels the result reached by the Majority, I join in the Majority's well-reasoned opinion. Nevertheless, because I am troubled by the status of the law that allows an EMT to conduct an unlawful stop of a citizen without apparent consequence, I write separately to address my concerns.

¶ 2 If an FBI agent would have stopped Appellant, the evidence would have been suppressed. *Commonwealth v. Price,* 543 Pa. 403, 672 A.2d 280 (1996). If a Liquor Control Enforcement officer would have stopped Appellant, the evidence would have been suppressed. *Commonwealth v. Bienstock,* 449 Pa.Super. 299, 673 A.2d 952 (1996). If an off-duty police officer, outside of his jurisdiction, had stopped Appellant, the evidence would have been suppressed. *Commonwealth v. Bradley,* 724 A.2d 351 (Pa. Super 1999) *(en banc), appeal denied,* 560 Pa. 696, 743 A.2d 913 (1999). Here, because Appellant was stopped by an EMT, the evidence will not be suppressed. The result of this rule is that if a citizen with no authority whatso-ever (see majority's example of a boy scout) stops another citizen, who happens to be driving under the influence, the case will proceed to trial. If a citizen with some authority stops another citizen, who happens to be driving under the influence, the evidence will be suppressed and the case will be dismissed. To me, this rule of law seems counter-intuitive. The actor, who at least has an arguable right to intercede upon observing a driver suspected of being intoxicated, is found not to have the authority and any evidence resulting from the actor's actions in "stopping" the citizen will be suppressed. Meanwhile, the fruits realized from a stop by an actor, who has essentially no basis whatsoever to conduct a stop, and essentially, no basis to believe he had a right to intercede, will not be suppressed.

¶ 3 This rule is troubling for a few reasons. First, by attaching no negative consequences to the actions of a citizen, who is acting with no authority whatsoever to stop his fellow citizen and call the police, this rule validates, if not outright encourages, vigilantism. No suppression of the evidence results because the vigilante citizen is not a state actor and, in effect, the Commonwealth simply reaps the benefits of the unjustified and unlawful actions of the private citizen. The target citizen could, of course, ignore the vigilante citizen and continue on in the face of the vigilante's attempts to effectuate a stop. But how is the target citizen to know if the vigilante citizen is a state actor, particularly if the citizen is in uniform or, possibly, armed? If the vigilante citizen is an armed state actor (FBI agent, police officer) what steps can the state actor take to detain the target citizen? In my opinion these questions are too difficult to be resolved on the street when one party is possibly armed and the other is possibly intoxicated. (Note: many cases discussed involve intoxicated defendants). Simply

stated, there is no clarity as to who can do what.

¶ 4 Secondly, the present rules seem destined to promote a violent if not tragic encounter. In the present case, Appellant peacefully complied with the unlawful actions of Mr. Cropelli. Query: what would Mr. Cropelli have done if Appellant had ignored him? What if upon stopping and Mr. Cropelli was approaching him, Appellant realized that Mr. Cropelli was only an EMT and decided to leave. I can easily see such circumstance escalating into a physical altercation, as the vigilante citizen tries to enforce the stop. Had Appellant, upon seeing who was attempting to stop him, simply driven off, would Mr. Cropelli have pursued Appellant? Might a high speed chase ensue under those circumstances? Might the drunken driver crash his vehicle injuring himself, and possibly other occupants or other drivers or pedestrians?

¶ 5 Our message is that state actors sometimes improperly stop citizens, but pure vigilantes always properly stop other citizens. This result troubles me in that it appears to encourage vigilantism and discourages state actors from taking action. Nevertheless, I believe the result is compelled by the existing case law and I point out these concerns in hope that those who are empowered to do so will correct this counterintuitive result.