J-S74029-17

2018 PA Super 151

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                              :             PENNSYLVANIA
                                                :
                  v.                           :
                                                :
                                                :
RICHARD HEWLETT                   :
                                                :
                  Appellant            :     No. 906 EDA 2016

Appeal from the Judgment of Sentence November 6, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000583-2015

BEFORE:  BOWES, J., LAZARUS, J., and RANSOM, J.

CONCURRING OPINION BY BOWES, J.:

I join the learned Majority's disposition of Appellant's sufficiency challenges.  I disagree, however, with my colleagues' finding that Appellant waived his claim that the trial court abused its discretion when it permitted the Commonwealth to introduce evidence that witness Tiffany Johnson felt intimidated due to the actions of a spectator.  I would reach the merits and find no abuse of discretion.  Finally, I distance myself from language that not only approves of the trial judge searching spectators' cell phones, but tacitly encourages judges to do so in the future.

I first address why there is no waiver herein.  During Ms. Johnson's testimony, Appellant objected to a question and the court asked to see counsel at sidebar.  I quote the relevant exchange in full:

> THE COURT: Let the record reflect the jurors have left the room.
> What was that about?

THE SHERIFF: There is a reason, Your Honor.

THE COURT: Is there anyone in this courtroom recording these proceedings or photographing anyone here?

THE SHERIFF: Your Honor, give me one second, all right. Come on, Man.

(Sheriff escorted the defendant out the courtroom.)

THE COURT: There is a big sign on the door that says don't bring phones into the courtroom. Don't use them if they're in here. I will ask my question again. Is there anybody here taking photographs or recording these proceedings?

THE SHERIFF: Your Honor I don't know what the young man in the red is doing but I did have to ask him to put his phone away once already. So I don't know what's going on. I am watching the custody. I'm doing the best I can in the audience.

THE COURT: Are you recording these proceedings?

MALE VOICE: No, no when you stepped out the courtroom I thought it was okay for me to just put in my text message. I ain't taking pictures.

THE COURT CRIER: There is no cell phone usage in the courtroom, period.

MALE VOICE: I am not using it.

THE COURT CRIER: All cells [*sic*] phones are supposed to be off.

THE COURT: Why is it that every trial someone comes into this building intent on recording and photographing?

FEMALE VOICE: No, Your Honor, he is not recording anything.

THE COURT: We're going to find out, aren't we? See what's on his phone.

THE WITNESS: He had the phone up like this (indicating).

THE SHERIFF: You want it, Your Honor?

- 2 -

THE COURT: Did you look at it? I have an obligation to conduct this case, sir, in a civil fashion, the way people conduct themselves in a civil society. That means that no one should be threatened, you or this witness, and she has represented that you photographed her.

MALE VOICE: Your Honor, you can look in my phone right now.

THE COURT: Well I just want to you [*sic*] know why.

MALE VOICE: But listen to me.

THE COURT: If you had kept your phone in your pocket, we wouldn't be having this discussion.

MALE VOICE: Your Honor, I need my phone.

THE COURT: Every single trial.

MALE VOICE: I need to get a ride home.

THE COURT: What is your name?

MALE VOICE: Maurice McCall.

THE COURT: Come to the bar. On the other side.  What is your name?

MAURICE MCCALL: Maurice McCall, sir.

THE COURT: Spell your first name.

MAURICE MCCALL: M-A-U-R-I-C-E.

THE COURT: Spell your last name.

MAURICE MCCALL: M-C-C-A-L-L.

THE COURT: One more time.

MAURICE MCCALL: M-C-C-A-L-L.

THE COURT: What is your date of birth?

. . . .

THE COURT: Sir, this is a public courtroom. Everyone is welcome but you have to follow the rules.

MAURICE MCCALL: Okay, sir.

THE COURT: Keep your phone in your pocket. Have a seat.

(At 2:45 p.m. the Court took a brief recess.)

N.T., 9/2/15, at 174-78. It appears that the recess was for the trial judge to search McCall's cell phone, as the proceedings resume with the following:

THE COURT: What does that one entry say? There is at least one entry here, sir, where you text the following words: This bitch just got on the stand on rich grove (phonetic).

You've got nothing better to do than come to court and carry on in this fashion? This phone will be held in the event the District Attorney's Office wishes to get a search warrant and search your phone, and if it's appropriate, it's their decision, not mine, to take action. So your phone will be held until such time as a decision is made.

MAURICE MCCALL: All right.

THE COURT: And you or no one else is to bring a cell phone in this courtroom.

*Id*. at 178.

The Commonwealth informed the trial court that it intended to elicit from Ms. Johnson what she observed:

[COMMONWEALTH]: Yes. I would be asking to present this information to the jury. This is corroboration of what this witness has been going through: Calls, intimidation. When he makes the argument in his closing that people don't want to give their names, that that's some error on the Commonwealth, it's because of behavior like this that people don't want to come to court and

- 4 -

testify. And she doesn't want to give names of people in the courtroom. And it's direct evidence of what's happening while she's taking the stand.

. . . .

THE COURT: . . . So how do you propose to do that?

[COMMONWEALTH]: Well, I will ask this witness, Your Honor, did she notice someone, you know, pulling out the phone in the courtroom and she alerted the court staff. After that I will have a detective here tomorrow to do a search warrant, have Your Honor sign it, look into the phone and testify to what he found on the phone.

. . . .

[APPELLANT]: Oh, I'm sorry, Your Honor. **Please note my objection to the admission of any of that evidence** regarding what happened with the phone. There is no evidence that my client knows the man in the red shirt, was acting at his direction or that it has anything to do with this case. The admission of that evidence would be purely prejudicial and not probative of any element in this case.

THE COURT: **You will give a curative instruction** as to how they should receive it and I will tell them there is no evidence that your client solicited the behavior and that they may receive the evidence for one purpose only, for what effect, if any, it had on this witness' testimony.

[APPELLANT]: **Understood, Your Honor**.

*Id*. at 179-81 (emphases added).

Trial resumed, and the Commonwealth asked Ms. Johnson if she "notice[d] any behavior from someone in the audience?" *Id*. at 182. She explained that she saw a man put his phone up, causing her to tell a courtroom officer. The trial judge then stated, "Ladies and Gentlemen, what you heard must be received by you for one purpose only; that is what effect, if any, it

- 5 -

had on Ms. Johnson's testimony. There is no evidence that the defendant, Hewlett, solicited this behavior." *Id*. at 183.

The Majority determines that Appellant waived his claim because "upon the court's request, counsel for Hewlett agreed to and drafted a curative instruction." Majority Opinion, at 9. I respectfully disagree. The trial judge unmistakably denied Appellant's motion to bar any mention of the incident, and **ordered** Appellant to draft a curative instruction. The phrase "you will give a curative instruction" cannot possibly be construed as a request.

Additionally, the Majority appears to attach significance to the fact that Appellant stated "Understood, Your Honor" after the trial court denied his motion and ordered him to craft a curative instruction.[1] If the Majority construes that response as waiving any objection, I disagree with that conclusion as well. In context, Appellant was plainly stating that he respected and understood, but did not agree with, the trial court's ruling. From now on, litigants would be well-advised never to agree in any fashion with a court's

---

[1] The Majority's analysis is asymmetrical in that it finds that Appellant "acquiesced to the trial court's ruling" by furnishing a curative instruction and thereby "waived any challenge to the court's ruling." Majority Opinion, at 9-10. There is nothing to cure if Appellant was, in fact, waiving his objection to the admission of such evidence. This is not a situation where the litigant agreed to a curative instruction as an alternative to some other relief. *See* ***Commonwealth v. Thoeun Tha***, 64 A.3d 704, 713 (Pa.Super. 2013) (noting that counsel "agreed to the trial court's proposed curative instruction in lieu of granting the motion for judgment of acquittal").

ruling, lest this Court later mistake courtesy for capitulation. Finding waiver on these terms discourages civility and promotes combativeness. In my view, Appellant preserved his objection, and I would reach the merits of his claim.

Nonetheless, I find no trial court error in allowing the Commonwealth to ask Ms. Johnson what she observed. The trial judge was present and able to discern if Ms. Johnson's demeanor was affected by her observations, and I agree that an instruction was warranted if her testimony was influenced by what she saw.[2] Furthermore, the trial court did not inform the jury what the messages said, and there is no indication that the jury was aware that the trial judge conducted his own review of the phone.[3] I therefore agree that the instruction was proper.

_____

[2] As it relates to the subsequent search of the cell phone, it is impossible to determine to what extent, if any, the discovery of the message influenced the trial court's decision to permit the introduction of Ms. Johnson's observations. In my view, the instruction was warranted whether actual intimidation occurred or not, because it was Ms. Johnson's behavior on the stand combined with her subjective belief that justified the instruction. In short, whether Ms. Johnson was actually intimidated is immaterial, the question is whether she believed that she was being intimidated.

My finding that the court did not err therefore rests on the understanding that the witness's testimony was, in fact, affected in some fashion by her belief that she was being intimidated, warranting an instruction to the jury to aid its assessment of her demeanor. To the extent the Majority suggests that the instruction was permitted because the search of McCall's cell phone appeared to corroborate that belief, I disagree.

[3] While I find no error, I believe that it is preferable in such situations to instruct the jury that there was no evidence that witness intimidation actually occurred, and that the spectator may have been using the phone for a benign purpose.

- 7 -

I now address the Majority's footnote discussing the trial court's search of McCall's cell phone. I would think that this Court would recognize the oddity of a trial judge donning the hat of a police officer and searching a spectator's phone for evidence. The Majority, however, believes that the search was a proper mechanism to enforce its cell phone restriction policy:

> We are aware of the recent decision of our Supreme Court, **Commonwealth v. Fulton**, __ A.3d __, 2018 WL 987963 (Pa. February 21, 2018), in which the Court held that evidence gathered from a cell phone powered on without a warrant could not be used against a defendant. Here, we make no determination as to whether the contents of the spectator's cell phone could be used against either the spectator or the defendant, where the defense formulated a curative instruction that was accepted by the trial court and read to the jury. **Rather, we simply affirm the authority of a trial court to enforce its order that a cell phone may not be used in its courtroom for any purpose**, particularly during a trial and especially if the effect of such use is to intimidate a witness while she is testifying.

Majority Opinion, at 10 n.3 (emphasis added).

It is difficult to read this language as anything other than an approval of the search, which I do not join. First, it seems to me that McCall consented to the search in the hopes that the judge would immediately return the phone. N.T., 9/2/15, at 93 ("Your Honor, you can look in my phone right now."). Accordingly, we should decline to address whether the judge would have been permitted to search without that consent, which he clearly intended to do.[4]

_____

[4] Moreover, McCall is obviously not a party to this litigation, and we lack any advocacy on this point.

*Id*. ("We're going to find out, aren't we? See what's on his phone.").  Having dipped our toe in these waters for no discernible reason, I must note my disagreement with the Majority's compulsion to "affirm the authority of a trial court to enforce its order that a cell phone may not be used for any purpose."

The Majority assumes, with no citation to authority, that the trial judge's duty to oversee an orderly trial permitted a search of McCall's cell phone.  That conclusion ignores Fourth Amendment concepts as applied to an issue that, to my understanding, is grounded in an interplay of the First and Sixth Amendments to the United States Constitution.  "We start with the proposition that it is a 'public trial' that the Sixth Amendment guarantees to the 'accused.'  The purpose of the requirement of a public trial was to guarantee that the accused would be fairly dealt with and not unjustly condemned."  ***Estes v. Texas***, 381 U.S. 532, 538–39 (1965).  The High Court has also recognized a First Amendment right to attend a criminal trial.  ***Richmond Newspapers, Inc. v. Virginia***, 448 U.S. 555 (1980) (plurality); ***Globe Newspaper Co. v. Superior Court for Norfolk Cty.***, 457 U.S. 596, 603 (1982) ("Although there was no opinion of the Court in [***Richmond Newspapers***], seven Justices recognized that this right of access is embodied in the First Amendment, and applied to the States through the Fourteenth Amendment.").  Hence, the public may attend the trial, but "the atmosphere essential to the preservation of a fair trial—the most fundamental of all freedoms—must be maintained at all costs."  ***Estes***, ***supra*** at 540.

- 9 -

I thus have no issue with the trial judge's order or enforcement thereof. Where I depart from my learned colleagues is their assumption that the court's authority to enforce its cell phone restriction justified the search. As indicated by the foregoing authorities, I view the cell phone order as a permissible restriction of otherwise-protected First Amendment activity due to the overriding governmental interest in preserving the integrity of the trial. Thus, McCall was subject to the cell phone regulation as a condition of entering the courtroom. The Majority missteps, however, by presuming that a lawful restriction of First Amendment rights means that a spectator has somehow checked his Fourth Amendment rights at the door as well.

I will assume *arguendo* that the court was permitted to seize the phone as opposed to employing other measures, such as ejecting McCall from the courtroom or initiating contempt proceedings. Once seized, the interest in enforcing decorum has been satisfied. Simply put, it is irrelevant **why** McCall was using his cell phone. Perhaps McCall was intimidating the witness, but maybe he was texting a friend, reading Twitter, or checking a sports score. The trial judge did not know what McCall was doing with his phone, which is precisely why he searched it.

Judges are not vested with the power to investigate crime or to collect evidence, and a judge's role in the investigatory process is neutral. ***See Commonwealth v. Dougalewicz***, 113 A.3d 817, 824 (Pa.Super. 2015) ("[F]or a search to be reasonable under the Fourth Amendment or Article I,

Section 8, police must obtain a warrant, supported by probable cause and issued by an independent judicial officer, prior to conducting the search.") (quoting *Commonwealth v. Gary*, 91 A.3d 102, 107 (Pa. 2014)). Furthermore, I recognize that discussing Fourth Amendment concepts of unreasonable searches and seizures assumes a State actor. *See Commonwealth v. Demor*, 942 A.2d 898 (Pa.Super. 2008) (off-duty paramedic in uniform was not State actor when he directed driver to turn into a parking lot while police responded to scene; therefore, exclusionary rule did not apply). None of this is to say that the trial judge was a State actor for these purposes or that McCall's Fourth Amendment rights were violated. The point is that the Majority does not recognize a distinction between **preventing** witness intimidation, which the trial judge was surely authorized to do, and **prosecuting** witness intimidation, which the trial judge has no authority to do. There is no doubt that witness intimidation is a serious crime, 18 Pa.C.S. § 4952. If the judge believed that McCall was committing that crime, he should have referred the matter to the proper personnel. It is practically certain that many such persons were in the criminal courthouse halls, if not the courtroom itself.

In sum, there was no need to search the phone. Whether McCall was intimidating a witness or using his phone for some benign purpose, his actions interfered with the solemn administration of justice and warranted remedial steps on that basis alone. If the trial judge believed a crime was being

committed, the proper course was to let law enforcement officials investigate the matter. For these reasons, I cannot join those portions of the opinion.